THE CITY OF ASHLAND, Respondent, vs. WHEELER, Appellant.

*October 29 — November 13, 1894.*

*Municipal corporations: Grant of franchise to water company: Repeal
or alteration: Regulation of rates: Collateral inquiry as to validity
of grant.*

1. Ordinances passed by a town board granted to a corporation a fran-
chise to furnish water for an unincorporated village within the
limits of the town. Afterwards the village became a city, and an
ordinance thereof granted and confirmed to the corporation all the
rights and franchises conferred by said town ordinances (which
were incorporated in and made a part of the city ordinance), sub-
ject to certain modifications. The city ordinance also fixed the
rates which the corporation might charge, and provided that, when
accepted, it should constitute a contract between the city and the
corporation. *Held,* that if the town ordinances were invalid be-
cause enacted without authority, they became valid as a part of
the city ordinance, which was authorized by its charter, and the
latter ordinance, upon acceptance of its conditions, became a valid
contract between the corporation and the city.

2. In the absence of an express delegation of such authority, the com-
mon council of the city had no power to repeal, alter, or impair
such franchise or contract; and an ordinance attempting to reduce
the rates which the corporation might charge was invalid.

3. The amended charter of Ashland,— providing (in subch. 11, ch. 27,
Laws of 1889) that " whenever the waterworks shall be owned by
the city, the same shall be operated under the direction of the board
of public works," and that " the common council shall have power
to legislate on all matters with reference to the construction, oper-
ation, management, and protection of the waterworks of the city,
not contravening the provisions of this act, or the constitution or
laws of this state, or contracts already made," etc.,— gave the com-
mon council no power to alter or repeal a franchise theretofore
granted to a water company.

4. The validity of the grant of a franchise to a water company cannot
be questioned collaterally, in a prosecution of one of its officers for
the collection of excessive rates, on the ground that a member of
the city council, whose vote was necessary to pass the granting or-
dinance, was a stockholder in the company, or that the rentals to
be paid by the city constituted a debt in excess of the constitu-
tional limit.

5. If an ordinance granting a franchise to a water company and the contract resulting from its acceptance are void, a subsequent ordinance attempting to alter the rates which the company is allowed to charge for furnishing water can have no validity, since in that respect neither the city nor the company owes any duty to the other.

APPEAL from the Circuit Court for *Ashland* County.

The defendant was prosecuted for wilfully and unlawfully exacting and receiving, as a servant and agent of the Ashland Water Company, a corporation of the city of *Ashland*, from James Anderson, a person whom it was bound to furnish with water for residence purposes in said city, an amount in excess of the established rates as fixed by secs. 1, 2, 3, and 4 of an ordinance of said city, entitled "An ordinance to establish and fix the rate or rates to be charged by the Ashland Water Company to its consumers under their franchise," to wit, the sum of $10 for a semi-annual payment, when the rate fixed by said ordinance was $5.25, contrary to the charter and ordinances of the city, etc. The answer of the defendant was a general denial. Upon trial before the court and jury, a verdict of guilty was given against the defendant, and it was adjudged that he pay a fine of $10 and costs, from which he appealed.

The defendant admitted the receipt by him, as superintendent of the Ashland Water Company, of $10 from Anderson for the semi-annual payment for furnishing said Anderson at his residence in said city of *Ashland* (an eight-room house, with closet), with water for the same; and the material question was whether the rate therefor was governed by the provisions of the ordinance mentioned in the complaint, enacted August 22, 1893, or by prior ordinances passed by the town board of Ashland, conferring upon the Ashland Water Company its franchise of furnishing the village of Ashland with water, and fixing the rates therefor, etc., and which had been combined into one ordinance

and adopted and enacted by the common council of the city of *Ashland*, August 2, 1887. The water company constructed and operated its works and furnished water to the village, and afterwards city, of *Ashland*, under these ordinances, until the ordinance mentioned in the complaint was enacted.

The town of Ashland included the unincorporated village of that name, containing more than 1,000 inhabitants when the franchise was granted to the water company, and became incorporated as a city in April, 1887. The town had passed various ordinances which purported, by their terms, to be contracts between it and the Ashland Water Company as to the rates for furnishing water to the village and to its inhabitants; and this franchise, it was originally stipulated, should be perpetual; and all rights, privileges, and franchises secured to the water company by the former ordinances were granted and secured to it by the city ordinance, subject to certain modifications, with the same effect " as if all the said ordinances had been duly passed and adopted from time to time by the mayor and council of the city, after its organization." By the terms of this city ordinance the franchise was limited in duration to fifty years, and the water company agreed to provide and supply water to the city of *Ashland* and its inhabitants for fire protection and domestic purposes for the term of fifty years, the city agreeing to pay for the fifty-four pay fire hydrants already established at the rate of $100 each per annum, and the water company agreeing to furnish eight free fire hydrants in addition thereto, and the city agreeing to pay for the next forty-six pay fire hydrants from time to time, at the rate of ten per mile on future extensions, at the rate of $60 each per annum, and for all pay fire hydrants in excess of the number of ·100 located from time to time, at the rate of ten per mile on future extensions, at the rate of $50 each per annum, and to annually

levy and collect a tax to meet the payment for all hydrant rentals under such ordinance. One of the ordinances so consolidated in and adopted by said city ordinance further provided that the water company, its successors and assigns, should not charge to consumers during the continuance of their franchise exceeding certain rates set out in a schedule made a part thereof, and by which such rates were to be collected in semi-annual instalments in advance, but that a meter might be inserted, at the discretion of the company, and the consumers supplied and charged at meter rates. It was provided by said ordinance for a written acceptance thereof by the Ashland Water Company, and thereupon the ordinance so accepted should constitute the contract and be the measure of the rights and liabilities of the city of *Ashland* and of the Ashland Water Company, its successors and assigns; and it was further provided that the mayor and city clerk should, upon such acceptance, seal duplicate copies of the ordinance with the seal of the city, and sign the same in the name and on behalf of the city, and deliver one of them, so sealed and signed, to the Ashland Water Company, and to receive the other in behalf of the city when signed and sealed by the water company, and to cause such copy and acceptance to be recorded in the office of the recorder of deeds of Ashland county. Evidence was given tending to show the acceptance of the ordinances by the waterworks company, and also by the city of *Ashland.*

The subsequent city ordinance of August 22, 1893, mentioned in the complaint, established and fixed the rate or rates to be charged by the Ashland Water Company to its consumers under its franchise at substantially fifty per cent. of the rate stipulated and fixed by the original ordinance, and provided, among other things, that it should be " unlawful for the water company, its servants, agents or employees, to charge, exact or receive from any consumer,

person or persons to whom they may or shall furnish water in the city of *Ashland* an amount in excess of the rate herein established and fixed; . . . and that any corporation, association, person or persons who shall violate this ordinance, or any part thereof, shall on conviction be punished by payment of a fine of not less than $10 nor more than $100, and by imprisonment in the city jail not less than thirty days nor more than six months, or both such fine and imprisonment, in the discretion of the court." The fifth section provided that "all ordinances or parts of ordinances in conflict with this ordinance are hereby repealed." The annual rate for supplying Anderson with water would be $20 under the original ordinance, but under the ordinance of August 22, 1893, it would be about $10.

The city of *Ashland* was incorporated upon the same territory as the village of Ashland, by ch. 127, Laws of 1887; and in 1884, when the first ordinance was adopted, the village had between 2,000 and 3,000 inhabitants. The water company built its works in 1884, at an expense of at least $100,000, and subsequently expended $100,000 in extensions and improvements, and from that time down to the present furnished water to the town and its successor, the city, and the inhabitants thereof. John H. Knight, a stockholder of the water company, was elected mayor, and one Harrison, one of the incorporators of the water company, and F. X. Schottmiller, a stockholder, were elected supervisors of the town. The common council consisted of the mayor, five supervisors, and five aldermen; and Supervisor Schottmiller owned two shares of the stock of the water company at the time the city ordinance of August 2, 1887, was passed, and was present when it was passed, and without his presence there would not have been a quorum. From time to time since its passage, up to and including the passage of the ordinance of August 22, 1893, the common council of the city of *Ashland* passed divers ordinances requiring the water

company to extend its mains and place hydrants under the provisions of such original ordinance, and refer to it in said ordinances as an existing ordinance. By subch. 11, ch. 27, Laws of 1889, it was provided that, whenever the water-works should be owned by the city, the same should be operated under the direction of the board of public works, and that the "common council shall have power to legis-late on all matters with reference to the construction, opera-tion, management and protection of waterworks for the city, not contravening the provisions of this act, or the constitution or laws of this state, *or contracts already made*," etc. Evidence was given showing the equalized assessment of the town of Ashland for 1883 was $1,028,836; for 1884, $1,928,327; for 1885, $1,333,438; for 1886, $1,200,000; for 1887, $1,000,000; and that its assessment as returned in 1886 was $2,037,541.

The court refused to direct a verdict in favor of the de-fendant, and held that the ordinance mentioned in the com-plaint, on which the prosecution was based, was valid; and that the ordinance or contract made or alleged to have been made between the city of *Ashland* and the water company was invalid; and that the recent ordinance was the one that governed the case; and that the jury might convict the de-fendant of the offense charged if satisfied beyond a reason-able doubt of the defendant's guilt.

For the appellant there was a brief by *Tomkins & Mer-rill*, and oral argument by *W. M. Tomkins.* They argued, among other things, that the ordinance of August 2, 1887, is a contract between the city and the water company. It was entered into pursuant to subd. 11, sec. 3, subch. 5, ch. 127, Laws of 1887.[1] The authorized body of a mu-

---

[1] Sec. 11, subch. 5, ch. 127, Laws of 1887, provides that the common council of the city of *Ashland* shall have authority, by ordinance, reso-lution, or by-laws: "11. To make and establish public pounds, pumps, wells, cisterns, and reservoirs, and to provide for the erection of water

The City of Ashland vs. Wheeler.

nicipal corporation may bind it by an ordinance, which, in favor of private persons interested therein, may, if so intended, operate as a contract. 1 Dillon, Mun. Corp. (4th ed.), § 474; 1 Beach, Pub. Corp. 254; *Fleckner v. Bank of U. S.* 8 Wheat. 338; *Argus Co. v. Albany,* 55 N. Y. 495; *Duncombe v. Ft. Dodge,* 38 Iowa, 281; *Goldsboro v. Moffett,* 49 Fed. Rep. 213. Municipal corporations entering into private or commercial contracts deal as private corporations or individuals, and are subject to the same duties and liabilities. *Western Sav. F. Soc. v. Philadelphia,* 72 Am. Dec. 730; *Indianapolis v. Indianapolis G. L. Co.* 66 Ind. 408. The ordinance being a contract, and the water company having acquired vested rights under the same, the common council had no power or authority to revoke or alter the same without the consent of the water company. *State v. Jersey City,* 49 N. J. Law, 303; *New Orleans v. G. S. T. & T. Co.* 3 So. Rep. 533; *People v. O'Brien,* 111 N. Y. 1.

For the respondent there were briefs by *Geo. P. Rossman,* city attorney, and *J. J. Miles,* of counsel, and oral argument by *Mr. Miles.*

works for the supply of water to the inhabitants and to the said city for fire protection and other purposes; to secure the erection of said waterworks, said city may, by contract or ordinance, grant to any persons, company, or corporation, the full right and privilege, and empower and authorize such company, persons, or corporation to build for themselves and own such waterworks, and to maintain, operate, and regulate the same, and in so doing to use the streets and alleys of said city in laying and maintaining the necessary pipe lines and hydrants, for such term of years and on such terms and conditions as may be prescribed by such ordinance or contracts, and may also, by contract or ordinance, provide for the supplying from said waterworks the said city with water for fire protection and other purposes, and also the inhabitants thereof with water, for such term of years, for such price, in such manner, and subject to such limitation as may be fixed by said contract or ordinance."— REP.

PINNEY, J.   1. The franchise of the Ashland Water Company to supply the inhabitants of the unincorporated village of Ashland with water, upon the terms stipulated in the original ordinance and the several ordinances amendatory thereof, was evidently granted by the supervisors of the town of Ashland, acting apparently under the statutes (secs. 819a, 892, 1780, S. & B. Ann. Stats.) giving, as therein provided, to town boards of towns containing one or more unincorporated villages having each a population of not less than 1,000 inhabitants, certain powers, as applicable thereto, conferred upon village boards by the provisions of ch. 40, R. S., and acts amendatory thereof.   No proof of previous authority from the electors of the town was shown, and it is doubtful whether the town ordinances were upon sufficient authority.   *Dullanty v. Vaughn*, 77 Wis. 38.   It appears that the contract made or franchise granted in the first instance, or assumed to be, was by the town board of the town of Ashland to Vaughn, Flagler, and Linnen; and from an ordinance in evidence, passed by the town board October 6, 1885, it appears that the Ashland Water Company was the assignee of the franchise and contracts made with them, and that said assignment was thereby ratified and confirmed, and that the water company was ordered to make certain extensions of its mains, without any unnecessary delay, and erect certain hydrants at various points in the village.   Other like extensions and hydrants were ordered by an ordinance, October 6, 1886; and these ordinances provide for the payment of a rental for the hydrants by taxation.

After the city was incorporated in April, 1887 (ch. 127, Laws of 1887), the common council passed the ordinance under which the water company charge and exact the rates complained of, the more material portions of which are stated above.   It was prefaced by the statement that, "it

being expedient and necessary to provide for the supply of water to the city of *Ashland* and its inhabitants for fire protection and wholesome water for domestic purposes, and the town of Ashland having heretofore caused such supply to be furnished under the five following ordinances, which are made a part hereof," by express reference, to wit, the ordinances referred to are incorporated in the city ordinance *in haec verba*, and it concludes with five other sections, the material parts of which are contained in the foregoing statement. Whatever doubt may exist whether the provisions of this ordinance were within the authority of the general statutes cited, there can, we think, be no question but that they became valid as a part of the city ordinance of August 2, 1887, and were within the power and authority of the common council. The franchise and contracts described therein, upon its passage and publication, became valid and binding as between the city and the water company.

It is enough that the franchise and contract between these parties is evidenced by matter of record, or by any writing or writings amounting to a written contract. It is not necessary that the franchise and contract should be granted or created by ordinance. A written resolution and acceptance are sufficient. The statute (S. & B. Ann. Stats. sec. 1780) expressly provides that the corporation "may make and enter into any contract with such city or village to supply such city or village with water for fire and other purposes upon such terms and conditions as may be agreed upon; . . . and any such city or village may, by contract duly executed by the proper authorities, acquire the right to use the water, . . . upon such terms and conditions as may be agreed upon by such corporation and the authorities of such city or village." The franchise is a special privilege, not belonging as of common right to the people at large. It is an executed contract on the part of the

state, the consideration for which is the benefit which the public will derive from its use and exercise. The common council is authorized by the statute to grant such franchises, and they are as much the franchises of the corporation as if granted by an express statute, for the common council exercises in granting them a delegated authority, and what it does within that power is done by the legislature through its agency. The acceptance of the conditions of the grant by the water company beyond doubt constituted a valid contract between it and the city. *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 620; *Bank of Augusta v. Earle,* 13 Pet. 519; *People v. A. & V. R. Co.* 24 N. Y. 261.

2. There is no provision in the statute delegating to the common council of the city the power to alter or repeal a grant of such franchise, though, through the exercise by the legislature of the reserved power in sec. 1, art. XI, of the constitution, it might alter or repeal it at will. In the absence of an express delegation to the common council, we think none can be implied. It was therefore beyond the power of the common council to alter, repeal, or impair in the least the franchise or contract in question, and the ordinance upon which this prosecution is founded is therefore clearly void.

It was, however, insisted that such power had been conferred on the council by the amended charter of the city (Laws of 1889, ch. 27, subch. 11), which provides that "whenever the waterworks shall be owned by the city, the same shall be operated under the direction of the board of public works;" and that "the common council shall have power to legislate on all matters with reference to the construction, operation, management, and protection of waterworks for the city, not contravening the provisions of this act, or the constitution or laws of this state, or contracts already made," etc. This act evidently is applicable

only in case the city builds waterworks of its own, or acquires the works of the water company, as it had reserved the right to do, and clearly indicates that its power of legislation could in no event be exercised to the prejudice of existing contracts, meaning, no doubt, the contracts here in question.

3. It was argued that as the vote of Schottmiller as a member of the common council, and who held two shares of stock of the water company, was required to pass the ordinance, it was therefore void, under the charter then in force (Laws 1887, ch. 127, subch. 14, sec. 3), which provides that "no member of the common council shall be a party to or interested in any job or contract with the city, and any contract with the city in which any such member may be so interested shall be null and void; and in case any money shall have been paid on any such contract, the city may sue for and recover the amount so paid from the parties to such contract, and from members of the common council interested in the same," — and, further, that the amount of annual water rentals which the city stipulated by the ordinance to pay to the water company in semi-annual payments during the term for which the franchise was granted constituted a debt against the city *in præsenti*, and was in excess of five per cent. of the taxable property of the city at the then last valuation thereof; and that therefore the ordinance and contract contained in it were prohibited by sec. 3, art. XI, of the constitution. It is a general rule that the validity of the grant of a franchise cannot be questioned collaterally or in any other way than upon proceedings by *quo warranto* for alleged usurpation of such franchise at the suit of the state. Ang. & A. Corp. §§ 731, 739, 742, 747; Booth, St. Ry. Law, § 44; *In re New York El. R. Co.* 3 Abb. N. C. 401. It would be intolerable if, upon any litigation between the city and the water company in relation to their respective rights or du-

ties under the ordinance in furnishing water, the water company could be put to strict proof of the existence of its franchise, and so, too, in respect to the rights and franchise of any corporation.

4. The objections of the city to the validity of the franchise and contract, if established, would necessarily prove fatal to the validity of the ordinance, and to the present prosecution under it; for it is manifest that if the franchise and contract contained in the ordinance of August 2, 1887, are, as the plaintiff contends, utterly null and void, the common council of the city of *Ashland* had no power whatever to pass the ordinance of August 22, 1893, and no power to legislate in respect to the rates which the water company, through the defendant, might charge for furnishing water, for in that respect the city and the water company would be as utter strangers to each other, neither owing any duty or obligation to the other.

For these reasons the circuit court erred in ruling that the ordinance last mentioned was valid, and that the defendant might be convicted under it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint.