Stedman and others vs. The City of Berlin and others.

STEDMAN and others, Appellants, vs. THE CITY OF BERLIN and others, Respondents.

*October 26—November 16, 1897.*

*Constitutional law: Limitation of municipal taxation or indebtedness: Remedy for vacating a franchise:* Quo warranto: *Parties: Pleading, admissions by demurrer.*

1. Where the party to whom a franchise has been irregularly or fraudulently granted is in the exercise of the privileges it confers, the remedy to set aside such franchise is by *quo warranto* or *scire facias* at the suit of the state, and not by an equitable action by private parties.

2. The allegations in a complaint that the city has voted to pay the sum of $4,500 per year as hydrant rentals, for the term of thirty years, and that the payment thereof in addition to its ordinary expenses will render necessary a levy of taxes in excess of the statutory and charter limit of taxation, do not present sufficient ground for enjoining the contract. The court cannot assume, in advance of the fact, that the city will levy illegal taxes.

3. In determining whether a contract by a city to pay annually a certain sum for annual rentals of hydrants for thirty years is in violation of the constitutional amendment (art. XI, sec. 3) prohibiting the incurring by a city of indebtedness exceeding five per cent. of the value of the taxable property therein, regard can be had only to the amount that may become due within a certain year or other period. The whole amount to be paid during the entire term does not constitute a debt, within the meaning of the constitution.

4. A stipulation in such contract, giving the city the option to purchase the waterworks, does not create an obligation to do so, and thus exceed the constitutional limit of indebtedness.

5. A demurrer admits only such facts as are legally pleadable and are well pleaded. It does not admit mere conclusions or general allegations of fraud without specification or detail, nor repugnant or contradictory allegations.

APPEAL from an order of the circuit court for Green Lake county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This action was brought by the plaintiffs, *Stedman* and others, suing for themselves and for all other taxpayers of

the city of *Berlin*, against the city of *Berlin*, its city treas-
urer, city clerk, and *W. H. Wheeler*, to set aside and vacate a
certain ordinance, contract, and franchise for the construc-
tion of waterworks in said city, as wholly null and void, and
as beyond the power of the city to make, and as fraudulent;
and the complaint prayed that the defendant *Wheeler*, his
agents, assigns, etc., be restrained by the order and judg-
ment of the court from commencing proceedings for or com-
pleting the erection of a system of waterworks in said city,
pursuant to said ordinance, franchise, and contract; and that
the city, its mayor and common council, its clerk and city
treasurer, be enjoined and restrained from levying any taxes
on taxable property in the city on account of hydrant rents
that might accrue under said contract, etc., or for the pur-
chase of said system of waterworks or any interest therein,
or for the payment of any incumbrance thereon or interest
on the same; and that the city be also restrained from in-
curring or creating any indebtedness for or on account of
said waterworks, etc.; and for general relief. The defend-
ants demurred to the complaint separately, on the grounds,
among others, (1) that the court had not jurisdiction of the
subject of the action; and (2) that the complaint does not
state facts sufficient to constitute a cause of action. Upon
argument it was ordered that the demurrers be sustained,
and that the defendants have judgment dismissing the com-
plaint, from which order the plaintiffs appealed.

For the appellants there was a brief by *Barbers & Beg-
linger* and *Engelbracht & Engelbracht*, and oral argument by
*Charles Barber* and *F. Beglinger*. They argued, among
other things, that the court had jurisdiction of an action by
taxpayers to set aside a fraudulent and void contract on ac-
count of which an illegal tax had already been levied, and
to restrain the expenditure of the moneys illegally collected
and the threatened contracting of a debt *ultra vires*. *Peck
v. School Dist.* 21 Wis. 516; *Whiting v. S. & F. du L. R. Co.*

25 id. 167; *Lawson v. Schnellen*, 33 id. 288; *Nevil v. Clifford*, 55 id. 161; *Lynch v. E., L. F. & M. R. Co.* 57 id. 430; *Hebard v. Ashland Co.* 55 id. 145; *Willard v. Comstock*, 58 id. 565; *Fowler v. Superior*, 85 id. 411; *Earles v. Wells*, 94 id. 285; *Crampton v. Zabriskie*, 101 U. S. 601; Dillon, Mun. Corp. §§ 910, 919.   The contract is illegal, in that it creates a municipal indebtedness far in excess of the constitutional limit.   *Earles v. Wells*, 94 Wis. 285, and cases cited; *Perrin v. New London*, 67 id. 416; *La Porte v. Gamewell F. A. Tel. Co.* 35 L. R. A. 686.

For the respondents city of *Berlin* and others there was a brief by *George Haney* and *Bouck & Hilton*, and oral argument by *Gabe Bouck*.

*Perry Niskern*, for the respondent *Wheeler*.

PINNEY, J.   The complaint in this action, with its exhibits, is so lengthy that it is impracticable to give more than a brief abstract of it.   The contract and franchise granted to the defendant *Wheeler* were, in general terms and in substance, the same as in other like cases for the construction of waterworks and to furnish fire protection to cities.   It required the construction of waterworks for the city of *Berlin*, with eighty hydrants for fire purposes, at a yearly rental of $4,500, to be raised by taxation, for a period of not more than thirty years, and with an *option* that the city might purchase said system of works and extensions at any time within six months after their completion, for the sum of $60,000, and, in addition, such sum or sums as said *Wheeler* might have expended in addition thereto during the existence of the franchise, which was thirty years, at such price as might be agreed upon between the owners of the works and the city; and, in case they could not agree upon the sum, it was to be fixed by appraisement as provided in the ordinance and contract for the construction of said works and granting of the franchise, and the city was to

take the same subject to any mortgage indebtedness which should be a lien on said system; but the city was in such event to pay the owners of the works the value so ascertained and fixed, after deducting the amount of the mortgage indebtedness. The proposition to construct the system of waterworks was accepted by the city, and *Wheeler* gave bond, with sureties, to the city, for faithful performance on his part. October 17, 1895, notice was given that proposals for the constructing of such works and awarding the contract therefor, would be received by the city until 6 o'clock p. m., November 6, 1895. The council received bids, and rejected all but that of *Wheeler*, and on the next day awarded the proposed franchise to him; and on the 15th of November it was ordered published in the city paper, and published accordingly. November 19th the finance committee presented an estimate of the amount of money the city would need the ensuing year, so as to enable the common council to levy the necessary annual tax; and it was levied according to such report, including $13,078.20, to defray current expenses for all city purposes, exclusive of schools; and it included $2,250 for hydrant rental and waterworks under said ordinance and contract therefor. The entire levy was $26,214.21, and was levied upon the taxable property of the city, as shown by the assessment rolls of the last annual assessment, amounting to $873,807. Under the charter the total amount the city could levy for general city purposes, exclusive of schools, was ten mills on the dollar, and which, upon the assessment of that year, amounted to $8,738.07. Said levy was intended in part to pay hydrant rentals to the defendant *Wheeler;* and it was alleged that the tax was therefore illegal and void. The tax rolls had been completed, and the collection of the tax had been commenced. Various objections were made to the contract and ordinance, and to the validity of the taxation sought to be enjoined.

1. It is contended that the franchise and ordinance are

illegal and void, because such franchise was not published for not less than two weeks previous to taking action thereon by the common council, in order that the people whose interests were at stake might have an opportunity to be heard if they desired. Laws of 1893, ch. 148, sec. 1. And it is alleged that the franchises granted differed in certain particulars from the one published in the city paper. We are not called on to determine whether the franchise is void for the want of such publication or for the irregularities pointed out. The contract, it appears, had been completed before this action had been commenced, and the defendant *Wheeler* had acted under it, and given the city the bond required by the ordinance. The remedy to set aside a franchise irregularly or fraudulently granted, where the party to whom it has been granted is in the exercise of the privileges it confers, is by *quo warranto* or *scire facias* at the suit of the state, and not by an equitable action at the suit of private parties. *Ashland v. Wheeler*, 88 Wis. 617. The method of taking advantage of mistakes, irregularities, and illegalities in granting such a franchise is the same substantially as in respect to the formation of corporations, as to which the rule now is, with few exceptions, that no one can question the regularity of an incorporation except the state, where the statute allows an incorporation and the company has endeavored to incorporate and is acting as a corporation. 1 Cook, Stock (3d ed.), § 5, and cases cited. The weight of authority is against the remedy in equity in such cases. *Strong v. McCagg*, 55 Wis. 624. The granting of a franchise creates a contract between the state and the grantee, and whether the latter has complied with the conditions is a question of fact to be judicially determined. The state can waive strict compliance, and may elect whether or not it will insist upon a forfeiture. The remedy is granted for the injury to the public, and, though there may be an irregularity or mistake, it will not be granted as of course, but only when the public interest demands it.

2. It is alleged that the franchise and contract are illegal and void; that they bind the city to pay for hydrant rentals at $4,500 per annum for a period of thirty years, and that it will necessitate the levy of taxes for the payment of such rentals in excess of the statutory and charter limit of taxation; that the city annually requires, exclusive of schools and such hydrant rentals, upwards of $10,000 for the management of its ordinary affairs in the regular course of administration,— among other things, for its fire department, payment of officials, for street and bridge purposes, care of its poor, etc.; and that the city could not, without seriously rendering inadequate its means for providing for the public necessities, reduce the amount needed for its expenses; and that the authorized tax levy, after allowing for licenses and other sources of income, would not raise sufficient to pay such ordinary expenses of the city in addition to the hydrant rentals.    It is claimed that as the charter of the city (Laws of 1887, ch. 409, subch. V, sec. 51) limits the power of taxation by the common council for *current expenses* so that it shall "not exceed for all city purposes, except schools, ten mills on each dollar of the taxable property, as shown by the assessment roll of that year for which the tax is levied," the tax for water service and hydrant rentals, as specified in the ordinance, would make the city tax largely in excess of the ten-mill limit; that all the other taxes so levied for current expenses are necessary for the due operation of the city government; and that the levy of this additional tax for each year would be illegal and oppressive..

The amounts included in the tax levy mentioned are stated in the complaint probably as affording the presumption that approximately the same sums would be required for each succeeding year; but there is really no way by which the amount of the annual income of the city or its current expenses can be accurately determined in advance of the event. Such limitation as to the amount of taxes to be levied for city purposes would not, as a matter of law, prevent the

city from contracting or incurring debts to any extent it might choose, unless it should be so provided by its charter or by statute. The court cannot assume, in advance of the fact, that the city will levy illegal taxes, and on that basis grant an injunction in advance of any wrongdoing, actual or threatened. Mere conjecture or possibility is not enough to warrant judicial interference as against the city or the common council. These are questions to be met and dealt with as they arise. The powers of the city government are vested in the common council. The court cannot substitute its judgment for the judgment of the council. The question of the necessity or propriety of certain expenditures or improvements is left to the discretion of the council. The only question with which the court can deal is the question of power. So long as the council keeps within the rightful sphere of its powers, its judgment and discretion are absolute. The allegations of the complaint, therefore, in respect to the point above suggested, are not, we think, sufficient to entitle the plaintiffs to any relief.

3. It is argued that the contract of the city is in violation of the constitutional provision that "no city . . shall be allowed to become indebted in any manner, or for any purpose, to any amount, including existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness." [Const. art. XI, sec. 3, as amended.] The existing indebtedness of the city when this franchise was granted is stated at $24,450. The "last assessment for state and county taxes," within the meaning of this provision, is the last assessment in the municipality, as equalized by its board of review (*State ex rel. M., T. & W. R. Co. v. Common Council of Tomahawk*, 96 Wis. 73), which, as we have seen, was $837,807. The only way in which it can be claimed that the contract reaches or exceeds the constitu-

tional limit is to compute the annual hydrant rentals for the entire period of thirty years named in the contract, and upon the claim that by the contract the city has created an indebtedness of $135,000. It is entirely well settled that this claim is unfounded in law. Where a municipality contracts for annual services for a series of years, to be paid for by annual payments, such contract does not come within such a prohibition. "In such case the whole amount which may ultimately become due does not constitute a debt, within the meaning of the constitution. To that end, regard is to be had only to the amount that may become due within a certain year or other period." 1 Dillon, Mun. Corp. § 136a, and cases cited. It is clear that the city has not exceeded its constitutional limit to contract city indebtedness. The city is under no obligation to buy the waterworks constructed under the franchise in question. It has simply stipulated for an *option* to buy the same on the terms stated, as it may find it prudent or advantageous for it to do so or not. It may decline to purchase whenever the proper time for that purpose arrives, and this will put an end to the entire matter.. The case of *Earles v. Wells*, 94 Wis. 285, is unlike the present case in this respect: By the franchise or agreement in that case, the city was to continue during the period of thirty years to pay to the mortgagee of said works, or trustee, hydrant rentals besides the interest on such incumbrance; and, at the expiration of that time, the defendant city should, by virtue of such payments, be and become the absolute owner of said system of waterworks, free and clear of such incumbrance. The franchise provisions in that case were held to be an indirect method of agreeing to pay the principal and interest to become due on the bonds charged on the works, and, the obligation assumed being in excess of the constitutional limit of indebtedness, the contract was held void.

It is charged in the complaint in this action that, by the

terms of the contract between the city of *Berlin* and the defendant *Wheeler*, the city assumes an indebtedness, and does become indebted, in a large sum in excess of five per cent. of the assessed valuation of all property subject to taxation within the city, as ascertained by the then last assessment for state and county taxes previous to the making of said contract and incurring of said indebtedness; but there is nothing in the proposal, contract, or ordinance warranting any such conclusion. It is alleged, too, that said contract is a fraudulent scheme for the purpose of evading said restriction upon the power of the city to incur indebtedness, and imposing illegal, unjust, and exorbitant charges upon said city and the taxable property therein and the residents and taxpayers thereof; that, pursuant to the terms of the agreement, the city is to continue during the period of thirty years to pay to the mortgagee of said works, or trustee, hydrant rentals, besides the interest on the incumbrance on the same, and, at the expiration of that time, the defendant city, by virtue of such payments, shall be and become the absolute owner of said system of waterworks, free and clear of such incumbrance. It is true that it is alleged that such agreement is not set forth in the ordinance, but was secretly and separately made and entered into, without the knowledge of the public, to avoid and evade the constitutional and legal restrictions upon the power of the city to become the purchaser of the waterworks, and that the ordinance imposes upon said city an indebtedness beyond its constitutional and charter limit, and all the taxable property in said city will be unlawfully, unnecessarily, and unjustly subjected to taxation without any adequate remedy at law available to the plaintiffs or the taxpayers to prevent the same. There are, however, no facts pleaded that in the least justify such conclusions.

Various other like charges are found in the complaint, as that the contract and franchise so granted to *Wheeler* were

Stedman and others vs. The City of Berlin and others.

obtained by him through improper and undue influence ex-
ercised by him upon the members of the common council and
the committee having in charge his application for the fran-
chise; that secret negotiations were had and entered into
between the common council and said *Wheeler*, and the fran-
chise was agreed to secretly, without the knowledge of the
public and in disregard of the interests and reasonable rights
and privileges of the inhabitants of the city and taxpayers,
giving and granting to said *Wheeler* and his assigns unrea-
sonable, unjust, and excessive rights and privileges. It is
charged that *Wheeler* is not financially responsible, and has
not facilities and resources sufficient to erect said system of
waterworks, but intends to secure the necessary capital,
funds, and money therefor by incumbering the same in a
large amount in advance of completion; and, finally, that
*Wheeler* is a mere promoter. The demurrer of the defend-
ant admits only facts legally pleadable, and which are well
pleaded. . It does not admit the truth of mere conclusions,
general allegations of fraud without specification or detail,
nor does it admit repugnant or contradictory allegations.
It is not necessary to point out the many and glaring defects
in this complaint in these respects.

Taking all the allegations of this lengthy complaint to-
gether, and giving them the most favorable construction to
the plaintiffs, we are clearly of the opinion that they do not
state facts sufficient to constitute any ground for equitable
relief. The ordinance and franchise clearly authorized the
taxation complained of, and justify, in point of law, all that
appears to have been done under them. It is sufficient to
say that they cannot be set aside or vacated in a court of
equity at the suit of a private party. *Milwaukee Electric
R. & L. Co. v. Milwaukee*, 95 Wis. 39. For the reasons
stated, the order appealed from is correct, and must be af-
firmed.

*By the Court.*— The order of the circuit court is affirmed.