Howard and another vs. City of Oshkosh.

HOWARD and another vs. CITY OF OSHKOSH.

CITIES. (1) *Charter construed.* (2, 3) *Presumption that city officers did their duty.* (4) *Verification of account against city.*

33    309
110    ¹678

1. The charter of a city authorizes the council " to appropriate in any one year, over and above the ordinary expenses needed on the bridges in said city, an expenditure not to exceed ten thousand dollars, for the building of a new bridge in said city or for any extraordinary repairs on any bridge, and for the payment of the same in whole or in part;" and it declares that " the council, instead of collecting the same in the next tax roll, may issue its bonds," etc. *Held*, that this does not prevent the council from letting by a single contract the work of constructing a bridge at a greater price than ten thousand dollars; but merely limits the amount to be raised by taxation, or the amount of bonds to be issued, in any one year, to pay for such work.

2. Where the record shows the letting of a contract for building a bridge in said city at a price greatly exceeding ten thousand dollars, but does not show whether a tax was imposed or bonds issued in excess of that sum in any one year, it will be *presumed* that the council did its duty in that respect.

3. The council having acted upon plaintiff's account for the *whole* of the work embraced in said contract, and having ordered it to be paid, except as to a single item for work which the parties agreed to defer, it will be *presumed*, in the absence of anything in the record upon the subject, that said account was *verified* in the manner required by the charter.

4. The present action being only for a balance alleged to be due plaintiffs, on the excepted item above named in their general account, it was not necessary to show a *separate verification* of such demand.

APPEAL from the Circuit Court for *Winnebago* County.

In April, 1871, the common council of the city of Oshkosh, the defendant, by resolution, authorized a committee of that body to perfect plans and receive proposals for building a new bridge across Fox river in the fifth ward of that city. The committee advertised for proposals to do the work, as required by the city charter, and accepted a proposal therefor made by the plaintiffs; and on the 22d day of June following, the council ratified and adopted the action of the committee, and the contract for doing the work was thereby awarded to the plaintiffs for the price and sum of $22,975. The plans upon which such proposals were made included a draw with a turn table, and approaches and piers. The record does not contain the contract between the city and the plaintiffs, but it seems that in such contract the price for the draw and turn table was fixed at $14,000, and for the approaches, at $8,975. The work under the contract, except painting the bridge, was all completed some time during the following winter. The mayor of the city advised that the bridge should not be painted until spring, and it was thereupon agreed between the mayor and the bridge committee of the common council, on behalf of the city, and the plaintiffs, that the city should procure the painting to be done, and should retain $300 of the contract price of the work out of which to pay the cost of such painting, and that the balance of the $300 should be paid to the plaintiffs. This arrangement was the subject of a verbal report to the council, which was submitted immediately after the same was made. Afterwards, and on the 22d of February, 1872, the council adopted a resolution for the payment of the contract price for the whole work except the painting.

Under the direction of the council, and after proposals had been duly advertised for, the contract for painting the bridge was let at the price of $175, and the work was done pursuant thereto, and paid for by order of the council. The expense of advertising was $3, which was also paid by the city. The

record does not show the terms of the contract with the plaintiffs as to the times of payment for the work done under it, but it appears that the plaintiffs were paid thereon $4,000 in the summer of 1871, $10,000 in November of that year, and $8,675, at a time not stated.

The common council having refused to pay the plaintiffs the balance of the $300 after deducting the expenses of painting the bridge (which balance is $122), this action was brought to recover the same; and the foregoing facts were proved by the plaintiffs on the trial of the action in the county court. When the plaintiffs rested their case, the defendant, by its attorney, moved for a nonsuit. The motion was granted, and judgment of nonsuit, with costs, was rendered against the plaintiffs; who have duly appealed therefrom.

*Jackson & Halsey*, for appellants.

*W. R. Kennedy*, for respondent.

LYON, J. It is not denied that the defendant, the city of Oshkosh, has in its treasury and under its control $122, which it agreed to pay to the plaintiffs, but now refuses to do so. It is not claimed that the plaintiffs have failed in any particular to perform their contract with the city, or that their work is not worth what the city agreed to pay for it. Under these circumstances it would seem to be eminently just and equitable that the city should fulfill its contract and pay over the money to the plaintiffs, and that, on its refusal to do so, the plaintiffs should recover it in this action.

But it is contended that there are certain legal objections in the way of such recovery, which are insurmountable. These objections will be considered in their order.

1. The city charter provides as follows: "All work for the city * * * shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting such contract." P. & L. Laws of 1868, ch. 501, sub-ch. 13-sec. 1 (p. 1378). It is not claimed that due notice of the let

ting of this work was not given in the first instance, or that the plaintiffs were not the lowest bidders therefor. But it is said the contract was not let to the plaintiffs under their proposal or bid to do the work for $22,975, but that the council, without readvertising for proposals or bids, let the contract for building the turn table to plaintiffs for $14,000, and for building the approaches to Paine & Sawyer for $8,975. We do not so understand the evidence. The plaintiffs proposed for the whole work, and their proposal was accepted by the council. The work was all done pursuant to such proposal, except the painting, and the price therefor specified in the proposal, except $300, was paid to the plaintiffs. The only testimony which tends to sustain the theory of the city attorney in his behalf is that of the city clerk, who says: "There is a written contract between the parties for draw and turn table, for $14,000. The city gave Paine & Sawyer the privilege of building the approaches, the city to have the right to take it off their hands, it not exceeding $8,975, within a year." It does not appear when such privilege was given, or that Paine & Sawyer ever had any contract with the city to build the approaches, or that they had anything whatever to do with the building of them. But were this otherwise, it is still perfectly apparent that the contracts were let and the work done pursuant to the bid of the plaintiffs, which was made in response to a notice calling for bids for the whole work and duly published. This all that the charter required.

2. It is claimed in the next place that the contract with the plaintiffs was a violation of the following provision of the city charter, and hence that no action can be maintained to enforce it: "The council shall have authority to apppropriate in any one year, over and above the ordinary expenses needed on the bridges in said city, an expenditure not to exceed ten thousand dollars, for the building of a new bridge in said city, or for any extraordinary repairs on any bridge, and for the payment of the same in whole or in part. The council, instead of collecting

the same in the next tax roll, may issue its bonds," etc.   P. & L. Laws of 1870, ch. 395, sec. 17 (p. 969).

The plain intention of the legislature embodied in this provision is, that not more than the specified sum shall be raised by taxation in any one year for the purpose of building new bridges or making extraordinary repairs on old ones ; or if city bonds be issued instead of levying a tax therefor, the amount of such bonds shall not exceed that sum in any one year.

We are not informed by the record in this case, except by inference, whether the common council have or have not violated this provision of the city charter by levying more than $10,000, or by issuing bonds for more than that amount, in any one year, for the purpose of paying for the bridge in question.   The presumption is, that the council have kept within the provisions of the statute.   Hence it becomes unnecessary to determine what the effect would have been, had the council exceeded its powers in this respect.

3. The only remaining objection to the plaintiffs' right to recover in this action, which it is necessary to consider, is, that their demand has not been verified by affidavit.   The charter provides that " no account or demand against the city shall be acted upon or paid unless the same shall be verified by affidavit," etc.   P. & L. Laws of 1868, ch. 501, sub-ch. 6, sec. 12 (p. 1355).

It does not appear from the record (except by presumption) whether the demand in controversy has or has not been thus verified.   But it appears that the common council acted upon the plaintiff's demand for the whole contract price of the work, and directed it to be paid, except the cost of painting.   As a matter of course, this demand was included in such direction.   Hence the common council have acted upon and allowed the demand to recover which this action was brought, and have directed it to be paid.   It is of no importance that this demand was thus acted upon as part and parcel of a larger one.   In the absence

of affirmative proof on the subject, it must be presumed, in favor of the regularity and legality of the proceedings and action of the common council, that the plaintiffs' demand was duly verified, before that body acted upon it.

Upon the whole, we think the plaintiffs made out a *prima facie* case, and that the nonsuit ought not to have been granted. The judgment of the county court must, therefore, be reversed, and a new trial awarded.

*By the Court.*—So ordered.