CARLSON, RESPONDENT, v. CITY OF HELENA, APPELLANT.

(No. 2,694.)

(Submitted April 24, 1909.   Decided May 1, 1909.)

[102 Pac. 39.]

*Municipal Corporations—Indebtedness—Extension of Constitutional Limit—Water and Sewer Bonds—Interest—Purchase of Water Supply—City Council—Discretion—Bonds—Validity—Redemption—Special Election Notice—Contents—Initiative and Referendum Statute—Inapplicability.*

Municipal Corporations—Indebtedness—Extension of Constitutional Limit—Necessity for—How Determined.

1.   Where the legislature had, by a general law applicable to all municipalities alike (Revised Codes, sec. 3259), extended the constitutional limit of indebtedness which a city could incur in the procurement of a water supply or the construction of a sewer system, it was not necessary that the question whether the necessity calling for an extension of the limit of indebtedness existed, be first submitted to the law-making power and authority obtained from it through a special Act. The determination of such necessity rested with the taxpayers affected by the contemplated improvement.

Same—Purchase of Existing Water Supply not Obligatory.

2.   Subsection 64, of section 3259, Revised Codes, does not make it incumbent upon a city, when it desires to acquire a water supply of its own, to purchase the system then maintained therein by any person or corporation under a franchise granted or contract made by the municipality, the course pointed out in the proviso in said section relative to the purchase of the then existing system being obligatory only when the city "desires" to so purchase; if not, it may procure any other available supply.

Same—Interest—Definition.

3.   Interest is merely an incident to the debt, to be paid from time to time or at the date when the principal falls due, in consideration of the forbearance extended to the debtor, and becomes a part of the debt, or a debt at all, only when it has been earned.

Same—Indebtedness—Limitation on Amount—Interest.

4.   In determining whether an indebtedness in excess of the limit authorized by law will be created by a proposed issue of municipal bonds, the interest reserved is not to be taken into account and added to the principal.

Same—Indebtedness—Constitutional Provision—When Complied with.

5.   The authority conferred upon a city council by a special election called for that purpose, to incur additional indebtedness for water and sewer purposes, does not lapse upon the completion of the assessment-roll for the year in which the election is held.   The requirement of section 6, Article XIII of the Constitution, that the question whether the debt shall be incurred must be submitted to the taxpayers "to be affected thereby," is satisfied if the council, after authority to

act has been voted, proceeds with reasonable diligence to issue and sell the bonds.

Same—Indebtedness—Extension—Submission to Electors.
6.  To authorize a city to incur indebtedness beyond the limit prescribed by law, it is not necessary to hold two elections, one to extend the limit and incur the indebtedness, and one to issue bonds.

Same—Purchase of Water Supply—City Council—Discretion.
7.  The discretion to purchase a particular water supply for a city is by law vested in the council exclusively, and of this discretion it may not devest itself by submitting the question whether a certain supply shall be purchased, without having first ascertained whether it is available and can be acquired for the amount of indebtedness to be incurred.

Same—Water Supply—Indebtedness—Provision for Payment.
8.  The provision of section 6 of Article XIII, Constitution, that the revenues derived from a water system purchased or installed by a city shall be devoted to the payment of the debt incurred in its acquisition, does not impliedly prohibit the municipality from resorting to taxation to pay the principal and interest on the bonds evidencing the indebtedness.

Same—Bonds—Validity.
9.  That municipal bonds upon their face pledge the full face and credit of the city to their payment is no objection to their validity.

Same—Bonds—Ordinances—Plurality of Subjects.
10.  An ordinance calling for a special election for the authorization or rejection of an increase of the city's indebtedness by the issuance of water *and* sewer bonds, was not obnoxious to the prohibition contained in section 3265, Revised Codes, that no ordinance shall be passed containing more than one subject.  The general subject of the ordinance was the incurring of the indebtedness, and the different purposes named in it as making the indebtedness necessary were matters of detail for the information of the voters.

Same—Powers—How to be Exercised.
11.  Where a power is by law conferred upon a municipality and the mode of its exercise is pointed out, such mode must be pursued.

Same—Bonds—Time of Redemption.
12.  In providing for the issuance of water and sewer bonds, it is incumbent upon the city council, under section 3460, Revised Codes, to make them redeemable, at its option, at a time prior to their maturity; its failure in this regard renders them void.

Same—Bonds—Notice of Election—Contents.
13.  Section 3455, Revised Codes, does not require that the notice of an election called for the purpose of obtaining authority to issue water and sewer bonds, shall state the time of payment of interest thereon. Section 3459 provides that it shall be paid semi-annually and the elector must be presumed to have understood that the time of payment would be that fixed by the statute.

Same—Bonds—Payable in Gold Coin—Validity.
14.  In the absence of legislation declaring otherwise, a city council may issue bonds "payable in gold coin of the United States of America, of the present standard of weight and fineness."

Same—Bonds—Ordinances—Initiative and Referendum Statute—Inapplicability.
15.  The provision of section 3268, Revised Codes, that no ordinance passed by the council of a city shall become effective until thirty days after its passage, which section is a part of the initiative and ref-

erendum law applicable to cities (Revised Codes, secs. 3266-3276), has no application to an ordinance providing for the issuance of water and sewer bonds after sanction of the taxpayers affected thereby has been obtained. The law has to do with matters of general legislation on which all electors, whether taxpayers or not, may vote, while the question whether bonds shall be issued can be submitted to taxpayers only.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Oscar Carlson against the city of Helena. Judgment for plaintiff, and defendant appeals. Affirmed.

*Mr. Edward Horsky,* for Appellant.

Ordinance No. 717 did not contain two subjects. While the purpose of increasing the city's indebtedness was twofold, *viz.,* one for the issuance of bonds for a water supply and system, and the other for a sewer, but one subject is included in the ordinance, and it is clearly expressed in the title, namely, that of increasing the constitutional limit of indebtedness of the city. (See *Law* v. *San Francisco,* 144 Cal. 384, 77 Pac. 1014; *Thomas* v. *Grand Junction,* 13 Colo. App. 80, 56 Pac. 655.)

The election was to be held April 25, 1908, and notice thereof was published in a newspaper printed and published in the city, commencing with April 4, 1908. This was a sufficient compliance with section 3455, Revised Codes. (*Scott* v. *Paulen,* 15 Kan. 162; *In re Woolridge,* 30 Mo. App. 612; *Coe* v. *Caledonia etc. Ry. Co.,* 27 Minn. 197, 6 N. W. 621; *Bean* v. *Barton County,* 33 Mo. App. 635; *Leonard* v. *Saline County Court,* 32 Mo. App. 633; *State* v. *Tucker,* 32 Mo. App. 620; *Seymour* v. *City of Tacoma,* 6 Wash. 427, 33 Pac. 1059; *Brady* v. *Moulton,* 61 Minn. 185, 63 N. W. 489; *Winston* v. *State,* 32 Tex. Cr. 59, 22 S. W. 138.)

The purpose of a notice being to warn the electors that an election is to be held, it is sufficient if there is a substantial compliance with the statutes. (*San Luis Obispo County* v. *White,* 91 Cal. 432, 24 Pac. 864, 27 Pac. 756; *Johnson* v. *Kessler,* 76 Iowa, 411, 41 N. W. 57; *Hawthorn* v. *State,* 116 Ala. 487, 22 South. 894; *City Council of Waycross* v. *Youmans,* 85 Ga. 708,

11 S. E. 865.) The question is, whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election. (*Wheat* v. *Smith*, 50 Ark. 266, 7 S. W. 161; *State* v. *Skirving*, 19 Neb. 497, 27 N. W. 723; *State* v. *McKinney*, 25 Wis. 416.)

The city may resort to taxation to pay interest on the bonds and provide a sinking fund. (See *Berlin Iron Bridge Co.* v. *City of Antonio* (Tex. Civ. App.), 50 S. W. 408; *Wright* v. *City of Antonio* (Tex. Civ. App.), 50 S. W. 406; *City of Boise* v. *Union Bank & Trust Co.*, 7 Idaho, 342, 63 Pac. 107; *Bruce* v. *City of Pittsburg*, 166 Pa. 152, 30 Atl. 834.)

Coupons providing for the yearly interest on the sum named in the bonds do not form part of the principal debt. (*Chaffee County* v. *Potter*, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040; *Herman* v. *City of Oconto*, 110 Wis. 660, 86 N. W. 681; *Ashland* v. *Culbertson*, 103 Ky. 161, 44 S. W. 441; *Kelly* v. *Cole*, 63 Kan. 385, 65 Pac. 672; *Epping* v. *Columbus*, 117 Ga. 263, 43 S. E. 803; *Gibbons* v. *Mobile Ry. Co.*, 36 Ala. 410; *Blanchard* v. *Village of Benton*, 109 Ill. App. 569; *Finlayson* v. *Vaughn*, 54 Minn. 331, 56 N. W. 49; *Durant* v. *Iowa County*, 1 Woolw. 69, Fed. Cas. No. 4189.)

The question as to whether the city has power to condemn any water right can only be raised by a person whose rights are sought to be condemned; he is the only person interested. (*Yellowstone Park Ry. Co.* v. *Bridger Co.*, 34 Mont. 545, 115 Am. St. Rep. 546, 87 Pac. 963.) If such party is willing to waive such power of condemnation, no other person can possibly have the right to insist on the want of such power. (*Butte A. & P. Ry. Co.* v. *Montana Union Co.*, 16 Mont. 504, 50 Am. St. Rep. 508, 41 Pac. 232, 31 L. R. A. 298.) Abundance of pure water is an absolute necessity for every city for the purpose of protecting the life and health of its inhabitants. It is also necessary for the protection of property in the city from fire, and for many other purposes. In *Van Reipen* v. *City of New Jersey*, 58 N. J. L. 262, 33 Atl. 740, it was held that a city has a right

to condemn and appropriate water already appropriated and used by a canal company, which is a quasi-public corporation, and the waters used by it devoted to public use. If a city can appropriate waters used by a canal company it surely can appropriate waters used by a farmer for irrigation. (See *Feliz v. City of Los Angeles,* 58 Cal. 73; *Vernon Irr. Co.* v. *City of Los Angeles,* 106 Cal. 237, 39 Pac. 762; *Los Angeles* v. *Pomeroy,* 124 Cal. 597, 57 Pac. 585.)

*Mr. C. W. Wiley,* for Respondent.

When the length of time of the notice is fixed by statute, a shorter time will not suffice. (10 Am. & Eng. Ency. of Law, 630; *Harding* v. *Rockford R. R. Co.,* 65 Ill. 90; *George* v. *Oxford Tp.,* 16 Kan. 72.) *People* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754, declares that in general elections, time, place and manner are fixed by law, and statutory requirements as to notice are directory; but that in the case of special elections the statutory requirements are mandatory. (See, also, *People* v. *Porter,* 6 Cal. 26; *People* v. *Martin,* 12 Cal. 409; *People ex rel. Westbrook* v. *Rosborough,* 14 Cal. 181; *People* v. *Thompson,* 67 Cal. 627, 9 Pac. 833; *People* v. *Supervisors etc. of Santa Anna,* 67 Ill. 57; *People* v. *Seale,* 52 Cal. 71.) "Where the statute authorizing the issuance of municipal bonds prescribes the mode in which the power is to be exercised, the municipality can act only in the mode prescribed, and all conditions imposed by the legislative or constitutional provisions with regard to the exercise of the power must be strictly complied with." (21 Am. & Eng. Ency. of Law, 45; *German Ins. Co.* v. *City of Manning,* 95 Fed. 597; *Swan* v. *Arkansas City,* 61 Fed. 478; *McLure* v. *Oxford Tp.,* 94 U. S. 429, 24 L. Ed. 129; *Aylmore* v. *City of Seattle,* 48 Wash. 42, 92 Pac. 932.)

If said section 3268, Revised Codes, applies to Ordinances 747 and 748, then they did not go into effect until thirty days after March 1, 1909, and, therefore, the notices of the sale of the bonds provided therein are nugatory, premature and of no force and effect, and, hence, would render the proposed sale of bonds of May 1, 1909, invalid. (*McLure* v. *Oxford Tp.,* 94

U. S. 429, 24 L. Ed. 129; *Manhattan Co.* v. *City of Ironwood,* 74 Fed. 535, 20 C. C. A. 642; *National Bank* v. *Town of Granada,* 54 Fed. 100, 4 C. C. A. 212; *Town of Rochester* v. *Bank,* 13 Wis. 432, 80 Am. Dec. 745, 746; *Keane* v. *Cushing,* 15 Mo. App. 96.)

*Messrs. Gunn & Rasch,* and *Mr. J. A. Walsh,* Appearing as *Amici Curiae.*

That part of subdivision 64, section 3259, Revised Codes, requiring the purchase of the existing water system and supply, is not unconstitutional, notwithstanding what is said in *Helena Con. Water Co.* v. *Steele,* 20 Mont. 1, 49 Pac. 382, 37 L. R. A. 412.  (See *City of Walla Walla* v. *Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; also *Citizens' Gas Light Co.* v. *Inhabitants of Wakefield,* 161 Mass. 432, 37 N. E. 444, 31 L. R. A. 457.)

If, however, it is unconstitutional, then the entire law on the subject of an indebtedness for a water supply in excess of the three per cent limit is inoperative and void.  (See *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; *Spraigue* v. *Thompson,* 118 U. S. 90, 6 Sup. Ct. 988, 30 L. Ed. 115; *Pollock* v. *Trust Co.,* 158 U. S. 635, 15 Sup. Ct. 912, 39 L. Ed. 1108; Cooley's Constitutional Limitations, 4th ed., 215-217; *Warren* v. *Mayor,* 2 Gray, 84; *Jones* v. *Jones,* 104 N. Y. 235, 10 N. E. 269; *People* v. *Briggs,* 50 N. Y. 566; *Commonwealth* v. *Hitchings,* 5 Gray, 485; *Allen* v. *Louisiana,* 103 U. S. 84, 26 L. Ed. 318; *Wills* v. *Austin,* 53 Cal. 179; *San Francisco* v. *Spring Valley W. W.,* 63 Cal. 530; *Virginia Coupon Cases,* 114 U. S. 305, 5 Sup. Ct. 903-1020, 29 L. Ed. 185; Sutherland on Statutory Construction, secs. 176-180.)

The interest, as well as the principal, should be considered in determining the extent of the obligation or the amount of indebtedness which will be incurred by the issuance of bonds. (See *State* v. *City of Helena,* 24 Mont. 521, 81 Am. St. Rep. 453, 63 Pac. 99, 55 L. R. A. 336; *Burlington Water Co.* v. *Woodward,* 49 Iowa, 59; *City of Springfield* v. *Edwards,* 84 Ill. 626; *Coulson*

v. *Portland,* Fed. Cas. No. 3275, Deady, 481; *State* v. *Hickman,* 11 Mont. 541, 29 Pac. 92; *State* v. *Barrett,* 25 Mont. 112, 63 Pac. 1030; *Herman* v. *City of Oconto,* 110 Wis. 660, 86 N. W. 681.)

The authority conferred by the election held in April expired at the time of the completion of the assessment-roll for this year. (See *Scipio* v. *Wright,* 101 U. S. 665, 25 L. Ed. 1037.)

The power of a city to incur an indebtedness does not embrace authority to issue bonds. The authority to issue bonds must be expressly conferred, and cannot be implied from the power to incur an indebtedness. (*City of Brenham* v. *Bank,* 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390; *Lehman* v. *San Diego,* 83 Fed. 669, 27 C. C. A. 668; 1 Abbott on Municipal Corporations, 169a-170; *Hill* v. *Memphis,* 134 U. S. 204, 10 Sup. Ct. 562, 33 L. Ed. 887.) If two elections are required, or if two questions are to be submitted, the election held did not confer any authority. (*Rea* v. *City of La Fayette,* 130 Ga. 771, 61 S. E. 707; *Denver* v. *Hayes,* 28 Colo. 110, 63 Pac. 311; *Lewis* v. *Bourbon County,* 12 Kan. 186; *Elyria* v. *City of Elyria,* 57 Ohio St. 374, 49 N. E. 335; *Farmers' L. & T. Co.* v. *Sioux Falls,* 131 Fed. 913; *City of Leavenworth* v. *Wilson,* 69 Kan. 74, 76 Pac. 400; *McMillan* v. *Lee County,* 3 Iowa, 311.)

The city had not the right to submit to the taxpayers the question of procuring a particular supply. The rule is that a municipal council cannot delegate a power requiring the exercise of judgment and discretion. (28 Cyc. 276-278; 2 Abbott on Municipal Corporations, 575; see, also, *In re Quong Woo,* 13 Fed. 229, 7 Saw. 526; *St. Louis* v. *Russell,* 116 Mo. 248, 22 S. W. 470, 20 L. R. A. 721; *Blair* v. *City of Waco,* 75 Fed. 800, 21 C. C. A. 517.)

Bonds cannot be issued to procure a water supply from McClellan creek until it has been determined that such a supply can be procured. It is necessary for the city, in order to acquire the right to the use of such water, to allege and prove that the use for which it is seeking to take the water is a more necessary public use than the use for irrigation. (*Helena* v. *Harvey,*

6 Mont. 114, 9 Pac. 903; 2 Lewis on Eminent Domain, 2d ed., p. 894.)

The city cannot resort to taxation to pay principal and interest of bonds, but debt must be paid from revenue to be derived from plant. (Constitution, Art. XIII, sec. 6; *Nashville* v. *Ray,* 19 Wall. 468, 22 L. Ed. 164; *Forbes* v. *Grand County,* 23 Colo. 344, 47 Pac. 390; *Minot* v. *Boston,* 142 Mass. 274, 7 N. E. 920.)

Where there is a doubt as to the power of a municipality to contract indebtedness, the doubt must be resolved against it. (*Butler* v. *Andrus,* 35 Mont. 580, 90 Pac. 785; *Palmer* v. *City of Helena,* 19 Mont. 61, 47 Pac. 209.)

Ordinance No. 717 is void in that it contains several separate and distinct subjects, to-wit, the constructing or purchasing of waterworks and the construction of sewers. (*Yessler* v. *City of Seattle,* 1 Wash. 308, 25 Pac. 1014.)

The provisions of the statute are mandatory upon the city council, and an ordinance containing more than one subject is void. (*Missouri P. R. Co.* v. *City of Wyandotte,* 44 Kan. 32, 23 Pac. 950; *Stebbins* v. *Mayer,* 38 Kan. 573, 16 Pac. 745.)

The ordinance also has to do with (a) extending the limit of indebtedness of a city; (b) issuing bonds; and (c) procuring a supply of water from McClellan creek. Each of these is a distinct and separate subject. (*Silva* v. *City of Newport,* 119 Ky. 587, 84 S. W. 741; *Marion Water Co.* v. *Marion,* 121 Iowa, 306, 96 N. W. 887; *Missouri P. R. Co.* v. *Wyandotte,* 38 Kan. 573, 16 Pac. 745.)

The city had no authority to issue bonds providing for payment "in gold coin of the United States of America of present standard weight and fineness." The trend of modern decisions is to restrict contracts for the payment of public indebtedness in gold coin, and to hold that the power to make such contracts must be expressly given. (*Burnett* v. *Maloney,* 97 Tenn. 697, 37 S. W. 689, 34 L. R. A. 541; *City of Cincinnati* v. *Anderson,* 10 Ohio C. C. 265; *Bronson* v. *Rodes,* 74 U. S. 229, 19 L. Ed. 141.)

The election held did not authorize issuance of bonds providing for levy and collection of taxes to pay principal and interest and pledging faith and credit of city. There was not a suggestion, either in the ordinance providing for the election or upon the face of the proposition, that taxes were to be levied on all the taxable property of the city to provide for the payment of the debt, and that the good faith and credit of the city generally should stand pledged for its punctual payment. "The subsequent proceedings must conform to the resolution. It cannot be altered or amended by them. A substantial departure from the resolution leaves the proceedings without foundation to support them." (*Elyria* v. *City of Elyria*, 57 Ohio St. 374, 49 N. E. 337; *Nalle* v. *City of Austin* (Tex. Civ. App.), 21 S. W. 379; *Skinner* v. *Santa Rosa*, 107 Cal. 464, 40 Pac. 742, 29 L. R. A. 512; *Aylmore* v. *Seattle*, 48 Wash. 42, 92 Pac. 932; *Big Grove* v. *Wells*, 65 Ill. 263; *Brown* v. *Carl*, 111 Iowa, 608, 82 N. W. 1033.)

All laws permitting public indebtedness to be increased must be strictly pursued. (*Dawson* v. *Waterworks Co.*, 106 Ga. 696; *Davis* v. *Dougherty County*, 116 Ga. 491, 42 S. E. 764; *Bowen* v. *Town of Greensboro*, 79 Ga. 709, 4 S. E. 159.)

*Mr. Edward Horsky* and *Mr. C. A. Loomis,* in Reply.

The provisions of sections 3454, *et seq.*, Revised Codes, as to time and interest, are directory. (*Township of Rock Creek* v. *Strong*, 96 U. S. 271, 24 L. Ed. 815; *Supervisors* v. *Galbraith*, 99 U. S. 217, 25 L. Ed. 411; *Board of Commissioners* v. *Vandriss*, 115 Fed. 866, 53 C. C. A. 192; *Lyons* v. *Lyons Nat. Bank*, 19 Blatchf. 279, 8 Fed. 376; *Dows* v. *Town of Elmwood*, 34 Fed. 117; *E. M. Derby & Co.* v. *City of Modesto*, 104 Cal. 515, 38 Pac. 900; *State* v. *Moore*, 46 Neb. 593, 50 Am. St. Rep. 628, 65 N. W. 194; 9 Rose's Notes (U. S.), pp. 425, 426.)

As to the right of the city to issue gold bonds, see: *Woodruff* v. *Mississippi*, 162 U. S. 291, 16 Sup. Ct. 820, 40 L. Ed. 973; *Judson* v. *City of Bessemer*, 87 Ala. 240, 6 South. 267, 4 L. R. A.

742; *Winston* v. *Fort Worth* (Tex. Civ. App.), 47 S. W. 740, 745.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff, a taxpayer and resident of the city of Helena, brought this action to test the validity of proposed issues of bonds by the city to the amount of $600,000, for the purpose of procuring a water supply and installing a system of pipes for its distribution, and $70,000 for the purpose of extending one of its sewers. From the complaint we gather the following facts:

On March 3, 1908, the mayor and the city council of the city of Helena, having determined that it was for the best interests of the city to own and control its own water supply and water system, and that a supply could be obtained from McClellan creek and brought into the city by an expenditure of $600,000, and also that a needed extension of the sewer system of the city could be effected by the expenditure of $70,000, provided the necessary funds could be realized from the sale of bonds issued by the city for these purposes, the issuance of such bonds being made necessary by the fact that the city was already indebted in excess of the three per cent limit imposed by the Constitution (Constitution, sec. 6, Art. XIII), enacted an ordinance reciting these facts and providing for a submission to the tax-payers of the city of the question whether the limit of indebtedness should be extended to procure the funds for these purposes. This course was adopted in order to make available the permission granted by the legislature (Revised Codes, sec. 3259, subd. 64), in pursuance of the proviso contained in the section of the Constitution referred to. The ordinance, designated as "Ordinance No. 717," provides:

"Section 1. That a special election be held in the city of Helena on the twenty-fifth day of April, 1908, for the purpose of ascertaining the will of the taxpayers, to be affected thereby, and that authority may be given and power conferred upon

the city council to increase the indebtedness of said city over and above the three per cent limit fixed by law, by the issuance: (1) Of water bonds of said city to the amount of six hundred thousand (600,000) dollars for the purpose of securing a water supply for said city, from McClellan creek and constructing a water system for said city, which said water supply and water system the city shall own and control and the revenue from which shall be devoted to the payment of the indebtedness incurred therefor, and (2) of sewer bonds to the amount of seventy thousand (70,000) dollars for the purpose of connecting the main west side sewer with the sewer farm and the Broadwater addition with such extension on the west side sewer and of connecting the sewer farm with Prickly Pear creek."

It further prescribes the character of the proposed bonds as $600,000 of water bonds and $70,000 of sewer bonds, all to be payable in not to exceed twenty years, and redeemable "in such manner" as might be provided in the ordinance directing their issuance, to be in denominations of $100 or multiples thereof, and "to bear interest at not over five per cent per annum." It also prescribed separate ballots to be used at the election, so that the electors could vote for or against the issuance of bonds for either purpose. The election was held on the date named, notice thereof, containing all the provisions of the ordinance above quoted or stated in substance, having been published in the "Helena Daily Record," a newspaper published in the city, for the three weeks beginning on April 4 and ending on April 25, and posted for a like period in three public places in the city. The result of the election showed a large majority in favor of both bond issues. Thereupon, and in pursuance of the authority thus given by the electors, an ordinance, designated as "Ordinance No. 747," was passed by the council and approved by the mayor on March 1, 1909, which, after reciting the proceedings had under Ordinance 717, authorized and directed the issuance of coupon bonds, signed by the mayor and the clerk, to the full amount of $600,000, dated January 1, 1909. It is therein prescribed that the bonds shall be for $1,000 each, numbered

from 1 to 600, inclusive; that they shall be designated as "water bonds"; that they shall be payable in "gold coin of the United States of America of the present weight and fineness"; that they shall be payable, $100,000 at the expiration of ten years, $100,000 at the expiration of fifteen years, and the remainder at the expiration of twenty years from the date thereof; and that they shall bear interest at the rate of five per cent per annum, payable semi-annually on January 1 and July 1 of each year, upon presentation of the coupons attached thereto, both principal and interest being payable at the office of the treasurer of the city of Helena, or, at the option of the holder, at some bank in the city of New York to be designated by the city treasurer. It is further provided that the different installments due and payable at the dates mentioned shall be redeemable at the same dates. Provision is made for the sale of the bonds to the bidder offering the highest price therefor, at the council chamber in the city hall, on May 1, at 12 o'clock noon, and the city clerk is directed to give notice accordingly in some newspaper published in the city of Helena, and also in a newspaper published in the city of New York, for a period of not less than four weeks. A like ordinance, numbered 748, was passed and approved on the same date, authorizing and directing the issue of bonds to the amount of $70,000, to be known as "sewer bonds," bearing the same date, having the same denominations, bearing the same rate of interest, and payable in installments and redeemable at the same time and place as the other bonds, as follows: $10,000 at the expiration of ten years, $10,000 at the expiration of fifteen years, and the remainder at the expiration of twenty years from date. The clerk was directed to give notice in the same manner that this issue would be sold at the same time and place as the water bonds and upon the same terms. It is alleged that the notice is now in course of publication as directed. The coupons attached to these bonds are to be made payable in lawful money of the United States. The recitals on the face of the bonds are to the effect that the city is not indebted in excess of the constitutional limit, that all the require-

ments of law touching the issuance of them have been fully complied with, and that the full faith and credit of the city is pledged in payment of both principal and interest.

It is alleged that the city is now indebted in outstanding bonds to the amount of $488,800; that the assessed valuation of the property in the city in 1907 was $10,799,000, and in the year 1908 $11,629,833; that the amount of the bonds now proposed, together with the interest to be paid thereon from date until maturity, will far exceed ten per cent of the assessed valuation of the property in the city, for either the year 1907 or 1908, without including the present amount of its indebtedness; and that, if they are permitted to be sold and to pass into the hands of *bona fide* purchasers, containing, as they do, recitals that the city is not indebted beyond the constitutional limit, and that all the requirements of the Constitution and laws of the state of Montana prior to their issuance have been observed, the city of Helena will be estopped to question their validity upon any ground whatever. It is also further alleged that there flows in McClellan creek, referred to in Ordinance 717, at the point at which the city proposes to make its diversion, three hundred and fifty inches of water, all of which has been appropriated by private individuals and is being used by them for the irrigation of farm lands lying adjacent to and along the stream; that the city has commenced an action in the district court of Jefferson county against one Dima S. A. Turner and others, for the purpose of acquiring, by the exercise of the right of eminent domain, the right to the use of one hundred and fifty inches of the water of McClellan creek, which has heretofore been used for mining and irrigating purposes on lands lying entirely outside of the watershed of McClellan creek, and which has never returned thereto or to any stream of which McClellan is a tributary; that the city has also commenced an action in the district court of Lewis and Clark county against one Burgess and others, for the purpose of acquiring by the same means the right to the use of three hundred and fifty inches of water of McClellan creek, owned and used as aforesaid; that both of these rights

are intended to be used to supply the inhabitants of the city with water; that both of these actions are now pending and undetermined; that by means of them and by some arrangement made with the said Turner the city "claims that it has and will acquire" the right to the use of three hundred and fifty inches of the water of McClellan creek for the purpose aforesaid; and that, if the city council is not enjoined, it will proceed to issue and deliver the bonds; that it will levy and collect taxes upon all the taxable property in the city for the payment of the interest thereon, and will construct the proposed water system to supply the city, all contrary to the law and to the irreparable injury of plaintiff and other taxpayers similarly situated. The prayer is for a perpetual injunction to restrain the defendant and its officers from proceeding further in the premises.

The district court having overruled a general demurrer, and the defendant having declined to plead further, judgment was entered for the plaintiff. The appeal is from the judgment. A motion to dismiss the appeal, made by members of the bar as *amici curiae,* on the ground that the action was collusive, was overruled (38 Mont. 581, 101 Pac. 163), but the movants were allowed to appear and assist counsel for respondent upon the argument. This they did, besides filing elaborate briefs. Many of the contentions made at the hearing arise upon alleged irregularities in the proceedings anterior to the election, such as the giving of notice of the registration of electors, the sufficiency of the publication of the notice of election, and similar matters. These proceedings we have not deemed it necessary to set forth in detail, since, upon an examination of them, we have concluded that it is not necessary to determine the contentions made with reference to them. We can most conveniently notice the other contentions by taking up the objections made by counsel for respondent to the validity of the bonds somewhat in the order pursued in their briefs.

1. The Constitution, Article XIII, section 6, declares: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, in-

cluding existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; *Provided,* however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt."

Section 3259, Revised Codes, after declaring that a city or town has power to contract indebtedness for the erection of public buildings, construction of sewers, waterworks, etc., to an amount not in excess of three per cent of the taxable property therein, as ascertained by the last assessment for state and county purposes, adds the following provisos: "*Provided,* that no money must be borrowed on bonds issued for the construction, purchase or securing of a water plant, water system, water supply or sewerage system, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city or town and the majority vote cast in favor thereof; and further provided, that an additional indebtedness shall be incurred, when necessary, to construct a sewerage system or procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt. The additional indebtedness authorized, including all indebtedness heretofore contracted, which is unpaid or outstanding, for the construction of a sewerage system, shall not exceed ten per centum over and above the three per cent heretofore referred to of the total assessed valuation of the taxable property of the city or town as ascertained by the last assessment for state and county taxes; and, *provided* further, that the above limit of three per centum shall not be extended, unless

the question shall have been submitted to a vote of the taxpayers affected thereby and carried in the affirmative by a vote of the majority of said taxpayers who vote at such election. It is further *provided,* that whenever a franchise has been granted to, or a contract made with any person or persons, corporation or corporations, and such person or persons, corporation or corporations, in pursuance thereof, or otherwise, have established or maintained a system of water supply or have valuable water rights or a supply of water, desired by the city or town for supplying the said city or town with water, the city or town granting such franchise, or entering in such contract, or desiring such water supply, shall, by the passage of an ordinance, give notice to such person or persons, corporation or corporations, that it desires to purchase the plant and franchise and water supply of such person or persons, corporation or corporations, and it shall have the right to so purchase the said plant or water supply upon such terms as the parties agree; in case they cannot agree, then the said city or town shall proceed to acquire the same under the laws relating to the taking of private property for public use; and any city or town acquiring property under the laws relating to the taking of private property for public use shall make payment to the owner or owners of the plant or water supply of the value thereof legally determined, within six months from and after final judgment is entered in the condemnation proceedings. * * * "

It is gathered from the complaint that the present indebtedness of the city, to the amount of $488,800, was contracted for the construction of the sewer system which it is now proposed to extend, and for other purposes, prior to the year 1893, when the assessed valuation of the property subject to taxation was much greater than during the year 1907 or 1908, and that it is an indebtedness not in excess of the constitutional limit of three per cent, as the assessed valuation stood at the time it was contracted. It may therefore be eliminated from this discussion.

The first contention made grows out of the different views of counsel as to the construction which should be given to the pro-

viso in the section of the Constitution, *supra.* Citing *Butler* v. *Andrus,* 35 Mont. 575, 90 Pac. 785, to the point that there can be no extension of the limit of indebtedness beyond the three per cent limit in any event unless a necessity requiring it has been determined, and then putting the question, "Who is to determine whether such a necessity exists?" counsel insist that this determination rests with the legislature, and that, whenever any city desires to secure a water supply and install its own water plant or construct a sewer system, it must first obtain a special Act of the legislature authorizing it to submit to the taxpayers the question whether the limit shall be extended. Counsel for defendant take the position that the law, as it stands, properly leaves the determination of the necessity calling for the extension of the limit to the people who must pay the additional taxes required in order to discharge the debt to be incurred. The latter position we think is correct. There is no doubt that the purpose of the convention in restricting the power of municipalities to contract indebtedness was to prevent extravagance. Nor can it be doubted that the purpose of the legislature in enacting the Code provision was to make effective the provision of the Constitution. (*Butler* v. *Andrus, supra.*) It is vested with the power to extend the limit. This it did, by a general law applicable to all municipalities alike, fixing it, for the two purposes mentioned only, at ten per cent over and above the three per cent limit, thus evincing an intention on its part to prevent extravagance in providing even for necessities which are often imperative. Evidently it also had in mind the general policy of the Constitution that the people in the different municipalities must be allowed, so far as possible, to control their own affairs, as well as the express provision that, "where a general law can be made applicable, no special law shall be enacted." Accordingly, it construed the provision to mean that it could, by a general law, grant permission to all the municipalities in the state to incur the additional indebtedness when the people residing and owning property therein should judge it to be necessary. It also recognized the implied limitation of its

power in the method prescribed for it to pursue in granting the permission, to-wit, by authorizing *municipal corporations* to submit the question to a vote of "the taxpayers affected thereby," leaving it to them, when they come to express their wishes at the ballot-box, to be governed by their own views of the necessities of the case as they see them in view of their ability to bear the additional burden of taxes to which they must submit. A contrary conclusion would result in overturning the statute and require the legislature to resort to special legislation in every case where the people of a city or town have reached the conclusion that their necessities require them to own and control their own supply of water or to construct or extend a sewer system after ascertaining by the hearing of evidence whether the alleged necessity exists, with the inevitable result that the health and comfort of the inhabitants of the municipalities would be exclusively in the hands of a body of men who would know and care the least about them. We cannot adopt a construction which would lead to this result.

2. Contention is made that the fourth proviso of the statute makes it incumbent upon a city or town, whenever it desires to procure a water supply, and there has been installed and maintained therein a system of water supply by any person or corporation under a franchise granted or contract made by the city, to first acquire such system of water supply, and that indebtedness may not lawfully be incurred by the issuance of bonds for the purpose of securing any other supply. It must follow, therefore, it is said, that, since the proposed issue of water bonds is expressly declared to be for the purpose of procuring a supply other than the one now maintained by a corporation under a franchise granted by the defendant, the issue would be without authority of law. There is no merit in this contention. The statute does not limit the power of choice of the city in this regard. The course pointed out in this proviso to be pursued is obligatory only when the person or corporation owns a supply *desired* by the city for its own use. If it does not desire the particular supply, it may procure any

other one available, as is made clear by the language of the proviso itself, and also by another provision contained in the latter portion of the subdivision which authorizes a city, through its council, to "procure and appropriate water rights and title to the same and the necessary real and personal property to make said rights and supply available." It does not appear from the record that the city is now being supplied with water by any person under a franchise or contract, but this is assumed by the parties to be the fact. Consequently we have considered the contention as though the question involved were properly before us for decision.

3. Much contention is made over the question whether the interest, as well as the principal, of the proposed issue of bonds should be taken into account in determining whether an indebtedness will be created thereby in excess of the ten per cent limit authorized by the statute. If the interest should be taken into account and the amount of it be added to the $670,000, of principal, as counsel contend, the sum would exceed ten per cent of the assessed valuation for 1907—the basis upon which it must be estimated—by several thousand dollars. The whole of the issue would then be void. This contention proceeds upon the theory that, when interest is expressly reserved in the contract, it becomes a part of the debt, and hence, in determining the amount of indebtedness which a city may contract by the issuance of bonds, the interest up to the date of maturity must be added to the principal. It is true that the reservation of interest is as much a part of the contract as the main promise (*State ex rel. State Savings Bank* v. *Barrett,* 25 Mont. 112, 63 Pac. 1030), yet no authority has been called to our attention which furnishes support for the rule contended for. Interest is merely an incident to the debt, to be paid from time to time or at the date when the principal falls due, in consideration of the forbearance extended to the debtor, and becomes a part of the debt, or a debt at all, only when it has been earned. If this is not the correct rule, then, as observed by the supreme court of Wisconsin in *Herman* v. *City of Oconto,* 110 Wis. 660, 86

N. W. 681, "most of the cases in the books relating to the as-
certainment of municipal indebtedness have been wrongly de-
cided." The subject has frequently been considered by the
courts of last resort in states having constitutional and statu-
tory provisions similar to ours, *supra*, and the conclusion reached
has been almost invariably against the contention here made.
(*Herman* v. *City of Oconto, supra; Finlayson* v. *Vaughn,* 54
Minn. 331, 56 N. W. 49; *Kelley* v. *Cole,* 63 Kan. 385, 65 Pac.
672; *Blanchard* v. *Village of Benton,* 109 Ill. App. 569; *City
of Ashland* v. *Culbertson,* 103 Ky. 161, 44 S. W. 441; *Gibbons*
v. *Mobile & Great Northern R. Co.,* 36 Ala. 410; *Jones* v. *Hurl-
burt,* 13 Neb. 125, 13 N. W. 5; *Epping* v. *City of Columbus,*
117 Ga. 263, 43 S. E. 803; *Durant* v. *Iowa County,* 1 Woolw.
69, Fed. Cas. No. 4189; see, also, 2 Abbott on Municipal Cor-
porations, sec. 160.) All of these cases rest upon the principle
that the authority granted by the Constitution or statute, as
the case may be, to contract a debt, refers to the amount of
the debt at the date at which it is created, and has no refer-
ence to the amounts of interest which accrue thereafter, and
thus construe the fundamental law according to the sense in
which the terms "debt" and "obligation" are used in the lan-
guage of the common people.

Counsel contend, however, that this court foreclosed the ques-
tion under consideration by the decision in *State ex rel. Helena
Waterworks Co.* v. *City of Helena et al.,* 24 Mont. 521, 81 Am.
St. Rep. 453, 63 Pac. 99, 55 L. R. A. 336. It is true there are
many statements in the opinion indicating that this court en-
tertained the conviction that the term "obligation," as used
in the Constitution, applies to any sort of a contract which
will certainly result in a debt *in futuro,* as well as to one creat-
ing a debt *in praesenti.* But we may not overlook the question
actually presented and decided. The contract involved was for
a water supply for the city for a term of five years. The city
was in default in its monthly payments. It was, at the time
the contract was made and at the time the action was brought,
indebted much beyond the constitutional limit. The purpose

of the action was to compel, by *mandamus,* payment of the monthly installments due for many months, amounting to several thousand dollars. The two questions at issue were, whether the contract was void *ab initio,* as creating an obligation on the part of the city which would inevitably result in a debt in excess of the limit, and whether the installments already due were debts within the meaning of the Constitution. Both questions were answered in the affirmative, the first upon the authority of *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249, and the second under the rule declared in *City of Springfield* v. *Edwards,* 84 Ill. 626, and similar cases. But this conclusion was held not to overrule or discredit the earlier case of *State ex rel. Great Falls Waterworks Co.* v. *Great Falls,* 19 Mont. 518, 49 Pac. 15; on the contrary, the rule announced therein was approved. That was also an application for *mandamus* to compel the defendant city to pay installments due upon a similar contract for a water supply furnished to the city by the relator. While approving the conclusion stated in *Davenport* v. *Kleinschmidt, supra,* this court held that inasmuch as the statute then in force (Session Laws 1889, sec. 16, p. 185) authorized the city to levy a special tax for a water supply, and inasmuch as the contract had been entered into in contemplation of a special fund being thus created by the city to meet the installments due from time to time, the contract did not create a debt within the meaning of the prohibition, and that the city should levy the tax and devote the proceeds to the payment of them. The interest charge here falls clearly within the rule of this case. Section 3459 of the Revised Codes provides: "A tax to be fixed by ordinance must be levied each year for the purpose of paying interest on the bonds [for water and sewer purposes] and to create a sinking fund for their redemption." The legislature in the enactment of this provision clearly evinced the intention that the interest installments falling due upon such bonds from time to time should not be deemed an indebtedness within the meaning of the Constitution, but that they should be paid out of the special fund thus created;

and it cannot be doubted that *mandamus* would lie, just as in the *Great Falls Case,* to compel both the levy of the tax and the payment of interest out of the special fund thus provided, and this without regard to the general rule declared in the cases *supra:* That interest reserved is not to be taken into the estimate in ascertaining the amount of a city's indebtedness.

Counsel for respondent also cite and rely with confidence upon the case of *Coulson* v. *City of Portland,* Fed. Cas. No. 3275, 6 Fed. Cas. 629. It is not directly in point either in fact or principle, but, were it so, in view of the foregoing considerations, we are not inclined to accept and follow it as authoritative.

4. Counsel submit the question whether the authority conferred upon the city council by the election of April, 1908, lapsed at the time of the completion of the assessment-roll for 1908. It is contended that since the Constitution provides that the question whether the debt shall be incurred must be submitted to the taxpayers "to be affected thereby," and property is transferred from time to time, the body of the taxpayers changes from year to year, and hence that the persons whose names appear upon the roll completed for the year 1908, and who are to be affected by the indebtedness, were entitled to be consulted. The provision of the Constitution must be given a reasonable construction. The necessities of a particular city or town may require it to incur an indebtedness at any time. So it requires time in which to hold the election. It requires time for the council, in pursuance of the authority conferred by the election, to advertise and put the bonds upon the market. The limit of time fixed by law during which the annual roll must be completed is the first Monday in October. (Revised Codes, sec. 2609.) If after the beginning of any year it should be necessary to issue bonds, and from any unforeseen delay, resulting from litigation or mistake, or any other like cause, they should not actually be sold and the money received for them before the first Monday in October, then, under the construction contended for, all the proceedings already had would be nugatory. A more reasonable view is that, after the election has been held and the indebtedness authorized,

the council may proceed to issue and sell the bonds, provided only that the authority conferred is executed with reasonable diligence. Although, in the meantime, there may have been changes in the body of the taxpayers affected by the increased indebtedness, this fact should no more affect the validity of the bonds than should such changes during the progress of the election. The body, as a body, to be affected having expressed its assent, this assent should not be rendered abortive by fluctuations in its numbers from day to day. After the authority to incur an indebtedness beyond the constitutional rate has been granted, the requirements of the fundamental law should be deemed satisfied, provided the council proceeds with reasonable diligence and the amount of indebtedness incurred does not exceed the rate of the extension when calculated upon the basis of either assessment-roll. (*Seymour* v. *City of Tacoma,* 6 Wash. 427, 33 Pac. 1059; *Chicago, Burlington & Quincy R. R. Co.* v. *Village of Wilber,* 63 Neb. 624, 88 N. W. 660.)

5. It is said that the authority of the city to incur an indebtedness does not include an authority to issue bonds, and therefore that two elections were necessary to authorize the proposed issue, (1) To extend the limit and incur the indebtedness, and (2) to issue bonds. It is not necessary to inquire whether the power conferred upon a municipality to incur indebtedness does not imply the additional power to issue evidences thereof, in the form of negotiable securities. Here the authority is expressly given. The Constitution does not prescribe the mode by which the legislature may authorize submission to the taxpayers of the question whether an indebtedness shall be incurred. The legislature, therefore, was free to prescribe such method as it chose. The method of procedure and the form of the question to be submitted by the council are prescribed in sections 3454 *et seq.,* Revised Codes. The form of the submission requires the electors to vote "Yes" or "No" upon the question whether bonds shall be issued; so that, in voting upon this question, they authorize the debt to be incurred by the issuance of bonds. The contention must be overruled.

6. A more serious and difficult question arises out of the contention that the city council has no authority to submit to the electors the question whether a particular water supply must be obtained, or, if it has, that the question may not be submitted in this restricted form until it has first been ascertained that the particular supply is available and what its cost will be. In other words, the contention is that the council is authorized to consult the taxpayers generally as to whether it may proceed to acquire a supply of water for the city, but that it may not devest itself of the discretion vested in it by law, as the governing body of the city, by leaving it to the electors to select a particular supply. This objection, it is said, is fundamental, because the discretion to purchase a particular supply is vested in the council, and this discretion cannot ordinarily be exercised until the council has ascertained that the particular supply is available, and that the cost of acquiring and installing it can be compassed by the amount of the indebtedness to be incurred. The contention must be sustained. The city may acquire a water supply by the exercise of the right of eminent domain. The statute *supra* expressly so provides (*City of Helena* v. *Rogan*, 26 Mont. 452, 68 Pac. 798), even though it may already have been appropriated to some other public use, as is the fact with regard to the water flowing in McClellan creek. A beneficial use of the water flowing in the streams of the state is a public use. (Constitution, Art. III, sec. 15.) It may nevertheless be appropriated to a more necessary public use. (Revised Codes, sec. 2213; *Butte, Anaconda & Pac. Ry. Co.* v. *Montana Union Ry. Co.*, 16 Mont. 504, 50 Am. St. Rep. 508, 41 Pac. 232, 31 L. R. A. 298.) While this is true, it does not necessarily follow that the city can acquire the exclusive right to the use of the water in a particular stream. It must first be shown that the use for which it is sought is a more necessary use; and then the city must be able financially to make compensation to the person or persons entitled to the present use. Lands in this state are usually of no value for agricultural purposes, without irrigation by artificial means. The taking by the city of a supply of water

used for this purpose, therefore, is also in effect the taking of the lands to which it has been made appurtenant, and the attendant cost may be so great that the city may not be able or willing, after the cost has been ascertained, to make the necessary compensation.

If the council should have first ascertained that the particular supply could be acquired, and that the cost of it, together with the cost of installment, is within the compass of the sum which the city can lawfully expend for that purpose, then there could be no possible objection to allowing the voters to speak as to the propriety of securing the particular supply. The council would then have exercised the discretion which is vested in it by law. If, however, all these matters have not already been determined, the vote becomes nugatory, because the assent given by the voters for the acquisition of the particular supply limits the discretion of the council, with the result that if it is thereafter found that the contemplated supply cannot be secured, or that the cost of installment is beyond the financial capacity of the city or not within the compass of the sum secured by the sale of the bonds under the extension already voted, the debt incurred can serve no purpose. It appears from the complaint that the council has authorized condemnation proceedings to acquire the right to the use of the water of McClellan creek, but that these proceedings have not yet been determined. It thus appears, and it is admitted by counsel for appellant, that the cost of acquiring the right has not been ascertained. If the intention to acquire it should be abandoned for any cause hereafter—and it cannot now be surmised what difficulties may be encountered—the city would have in its treasury the money derived from the sale of the bonds, without any use to which the council could devote it. The orderly course of procedure would be to submit the question generally whether the indebtedness, not in excess of a definite amount within the limit, should be incurred; then the council would be left free, in case the indebtedness should be authorized, to use its discretion in securing one supply or another, according as its judgment would dictate. The discretion

of the council in this particular is exclusive, and it cannot lawfully devest itself of it by casting it upon the voters, with the probably, or even possibly, absurd consequences to which we have adverted. (28 Cyc. 277, and cases cited in notes; Dillon on Municipal Corporations, 4th ed., sec. 96.) Having ascertained that a supply can be obtained, the council may then proceed, and, under the authority granted by the electors to incur the necessary indebtedness, to issue and sell bonds, acquire any supply which its judgment may dictate, and have it installed so that it may become available.

It might, perhaps, be said that the vote upon the submission in its restricted form could not be held binding upon the council in case it should turn out that the right to the use of the water in McClellan creek could not be acquired. This may with equal propriety be answered by the statement that the voters were not asked to extend the limit generally for water supply purposes, and it cannot be said that assent to incur the indebtedness would have been given if the question had been submitted generally, as the statute contemplates. (*Skinner* v. *City of Santa Rosa,* 107 Cal. 464, 40 Pac. 742, 29 L. R. A. 512.)

7. It is said that the city cannot resort to taxation to pay the principal and interest of the water bonds, but payment must, under the provision of the Constitution, be made exclusively from revenues to be derived from the water plant acquired by it. The question involved does not properly arise in this case. The validity of any bonds issued under authority of the statute applicable cannot be affected by the fact that in providing for their payment the council may have imposed an illegal tax upon the people in the municipality. The power to impose the tax has nothing whatever to do with the power to increase the debt. If the council has in any case exceeded its power in imposing a tax, the legality of the tax must be tested in proceedings brought for that purpose. But it may not be out of place to venture the remark that the requirement that the revenues derived from the water plant is not to be regarded as the only provision permissible for the payment of the bonds. In so far

as the Constitution imposes a limitation upon the power of the legislature, the extent of it is to require that the revenues derived from the water plant be devoted to the payment of the debt, and to prohibit their use for any other purpose. This limitation, however, does not imply a prohibition to grant the authority to the municipality to make additional provision for payment, which it has done in the Code provision *supra*. (Revised Codes, sec. 3459.) Nor is it any objection to the proposed bonds that upon their face they would pledge the full faith and credit of the city to their payment. As a matter of law, the full faith and credit of the city would be so pledged in case the bonds were issued. The fact that the formal pledge should be set forth in them could not affect their validity.

8. Counsel insist that Ordinance No. 717 is void, in that it contains two subjects, and is obnoxious to the prohibition contained in section 3265 of the Revised Codes, which declares: " * * * No ordinance shall be passed containing more than one subject, which shall be clearly expressed in its title, except ordinances for the codification and revision of ordinances." This provision imposes the same restriction upon the city council as is imposed by the Constitution upon the legislature (Constitution, Art. IV, sec. 23), and the purpose is the same. This purpose is pointed out in *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095, and the cases on the subject are there collated. The observance of the limitation is mandatory, and renders void any ordinance which violates it. But whatever is germane, incidental or necessary to the main or general subject of an ordinance may be included in it and is not a separate subject. (*State* v. *McKinney, supra.*) The general subject of ordinance 717 is the incurring of the indebtedness by the city. The different purposes named as making this necessary are matters of detail for the information of the taxpayers. The ordinance is not objectionable for the reason urged.

9. Is it incumbent upon the city council, in providing for the issuance of bonds for the purposes for which these bonds are proposed, to make them redeemable at the option of the city

council at a time prior to their maturity? The statute declares: "Sec. 3460. The bonds shall be made payable in not to exceed twenty years, and redeemable at such times as are prescribed in the ordinance directing their issue. Whenever at any time after such bonds become redeemable the sum in the sinking fund equals or exceeds one thousand dollars, the city or town treasurer must cause a notice to be published in one newspaper published in such city or town, that he will in thirty days from the date of such notice redeem said amount of the bonds which may then be payable, giving the number thereof, and calling for said bonds in their numerical order; and if at the expiration of said thirty days the holder of any bond thus called fails or neglects to present the same for payment, interest thereon must cease; but the treasurer must at all times thereafter be ready to redeem the same on presentation. Such notice must also be sent by mail to the bank of New York City which the treasurer has designated as the bank at which the bonds and the interest thereon will be paid."

Whenever a power is conferred upon a municipality, and the mode of its exercise is pointed out, this mode must be pursued. So the power to issue bonds redeemable and payable within a limit fixed by law must be pursued. (*Supervisors* v. *United States*, 4 Wall. 435, 18 L. Ed. 419; *City of Brenham* v. *German-American Bank*, 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390; *Barnum* v. *Okolona*, 148 U. S. 393, 13 Sup. Ct. 638, 37 L. Ed. 495.) The statute *supra* is mandatory in its provisions, both as to the term during which the bonds may run and as to the requirement that the council must reserve the option to redeem prior to maturity. The requirement in both these respects is a limitation upon the power to issue the bonds, and disregard of it in either would render them void. The purpose of the limitation as to the option to redeem is made manifest by the provision of the preceding section of the statute (3459) for the accumulation of a sinking fund, as well as by the mandatory provision in the latter part of the section itself, where it is made the duty of the treasurer, after such bonds have become redeemable, to

call them for payment in numerical order as soon as the sum of $1,000 or more has been accumulated in this fund. Here is manifested unmistakably an intention by the legislature that after a reasonable time the sinking fund shall not accumulate, but as fast as possible be applied to the payment of the debt and *pro tanto* discharge it.

But it is said that the statute leaves it to the council to say in its discretion, in order to increase the salability of the bonds, when they shall be redeemable, and hence whether they shall be redeemable at all. If this be so, why may it not with equal propriety be said that the council may in its discretion, in order to make the bonds more salable, enlarge the time for which they may run before maturity? No one would say that the council has any discretion in this particular, and yet the language that imposes this limitation is of exactly the same import in enjoining the duty to make the reservation. If the whole matter is lodged in the discretion of the council, then the addition by the legislature of the mandatory requirements touching the provision for a sinking fund and the calling of the bonds is without significance. It is clear that the legislature intended that the council should use a reasonable discretion in fixing the time after which payment of the debt must begin, so that within reasonable limits it might be the exclusive judge as to the marketable quality of the bonds; but it most clearly was not the intention that the wise precaution against the accumulation of the sinking fund and the attendant danger of its loss from dishonest diversion or bad investment of it should be wholly disregarded. Ordinance 717, providing for the election, and the election notice given in pursuance of it, notified the taxpayers that the bonds voted would be redeemable as the statute provides. The bonds proposed to be issued in the form exhibited in Ordinance 747 show a distinct departure, both from the statute and from the ordinance, in the omission of the reserved option. Issued in that form, they would therefore be void.

10. It is said that the notice of election did not authorize the issuance of bonds to bear interest at five per cent payable semi-

annually, in that it described bonds to bear interest at a rate not to exceed five per cent per annum. The statute (Revised Codes, sec. 3455) provides that "the notice must state the time and place of holding the election, the amount and character of the bonds proposed to be issued and the particular purpose therefor." It does not require in terms that the rate of interest be stated; but assuming, without deciding, that this is implied, there is no requirement that it shall state the time of payment. The statute (Revised Codes, sec. 3459) fixes this; and it may be presumed that each voter understood that the time of payment stated in the bonds would be that fixed by the statute. But, however this may have been, the designation of the date of payment of the amount to fall due annually may not in any legal sense be regarded as a change in the rate. The fund out of which payment must be made would be provided by the annual levy of taxes. (Revised Codes, sec. 3459.) The fund thus provided would already be in the treasury when the time for payment of the semi-annual installment should arrive, and the stipulation in the bonds by which the payment of one-half of the amount due at the annual rate would be anticipated by six months, could not add anything to the burden assumed by the taxpayer. The case of *Skinner* v. *City of Santa Rosa*, 107 Cal. 464, 40 Pac. 742, 29 L. R. A. 512, cited by counsel for respondent, is in point; but this case was overruled on the same point by the later case of *Murphy* v. *City of San Luis Obispo*, 119 Cal. 624, 51 Pac. 1085, 39 L. R. A. 444, and may not be regarded as authority.

11. It is argued that the council has no authority to issue bonds payable in "gold coin of the United States of America, of the present standard of weight and fineness." The people, it is said, by their vote authorized the issuance of bonds to a certain amount, in dollars; that dollars, cents and mills are the only monetary denominations known in this state, and that the amount named in dollars means lawful money of the United States. While this is true, it does not follow that, in the absence of legislation declaring otherwise, the city has no power to make

the bonds payable either in lawful money or in gold coin. The provisions of the statute authorizing the issuance of bonds such as these are silent upon the question as to the particular character of money in which they may be made payable, except that the treasurer must pay the interest coupons in lawful money of the United States. Whatever difference of opinion may have existed in the past on this subject, the controversy was authoritatively settled by the decision of the supreme court of the United States in *Woodruff* v. *Mississippi*, 162 U. S. 291, 16 Sup. Ct. 820, 40 L. Ed. 973. In this case the question at issue in the state court was the validity of certain bonds of the levee board of Mississippi, district No. 1. The bonds upon their face acknowledged an indebtedness for gold coin of the United States, which the board for itself and successors promised to pay. The coupons were payable in currency of the United States. The state court held, as is contended here, that the bonds on their face were payable in gold coin only, and that, since the legislature authorized the board to borrow money generally, it intended money that constituted the basis of the general business of the country, and, since a contract to pay in gold coin could not be discharged in any of the different kinds of money having a legal tender quality, the bonds were void for want of power in the board to issue them. (*Woodruff* v. *Mississippi*, 66 Miss. 298, 6 South. 235.) The supreme court of the United States, however, held (1) that the bonds were not by specific promise made payable in gold coin, and (2) that, if such had been the case, they would nevertheless have been valid, because the statute authorizing their issuance was silent as to the particular kind of money in which they might be made payable, and that express and general power to issue negotiable bonds, in the absence of legislative restriction, carries the implied or incidental power to make them payable generally; that is, in currency which is constitutionally a legal tender, or payable in the particular coin which constitutes the legal and commercial standard by which the value of other kinds of currency is measured. The same conclusion was reached by the supreme court of Alabama in *Judson* v. *City of Bessemer*,

87 Ala. 240, 6 South. 267, 4 L. R. A. 742, and by the supreme court of Texas in *Winston* v. *Ft. Worth* (Tex. Civ. App.), 47 S. W. 740, in which the court collates the authorities.

12. Finally, it is said that Ordinances 747 and 748, passed and approved on March 1, 1909, providing for the issuance of the bonds, could not, under the provisions of the initiative and referendum law applicable to cities, become effective until April 1, 1909, and hence that the notice of sale, the publication of which began on March 2, 1909, could not be deemed sufficient to render the sale valid. The initiative and referendum provisions referred to are found in the Revised Codes (sections 3266 to 3276). In order that the referendum provision may be made available, section 3268 declares: ''No ordinance or resolution passed by the council of any city or town shall become effective until thirty days after its passage, except general appropriation ordinances providing for the ordinary and current expenses of the city or town, excepting also emergency measures, and in the case of emergency measures the emergency must be expressed in the preamble or in the body of the measure, and the measure must receive a two-thirds vote of all the members elected.'' The argument is that since the ordinances could not be effective until April 1, the notice must be deemed to have been published without authority and to be abortive to give the officers of the city jurisdiction to sell the bonds at the date fixed in the notice. That this would be the result if the referendum provisions of the statute were applicable, we have no doubt; but upon a careful reading of them, we find that they have no application. They in terms apply, and were evidently intended to apply only, to matters of general legislation in which all electors without distinction may take an active interest. The question whether the council should have authority to issue bonds could be submitted to the taxpayers only. They had already exercised their prerogative reserved by the Constitution, under the provisions of the statute (Revised Codes, sec. 3259, and sections 3454 *et seq.*) and Ordinance 717. There is no provision for the submission to them of any other action taken by the council in pursuance of

the authority thus granted by them; nor is there any necessity that they should be consulted further. Their consent, given upon the submission of the primary question whether the debt should be incurred by the issuance of bonds, fully clothed the council with the power to issue and sell them according to the direction of the general statutes applicable. Furthermore, there being no special provision by which Ordinances 747 and 748 could be submitted to the taxpayers only, no submission of them could, under the general provisions, be made except to the elec- tors generally, and a submission to them could not lawfully be made because it involved a question upon which they were not entitled to vote.

Several other questions submitted in the briefs we have not deemed of sufficient merit to require special notice. Many of those which we have deemed it necessary to notice were urged by counsel representing the respondent, and others by counsel who were allowed to appear for other taxpayers. We have re- ferred to them generally, as urged by counsel for respondent.

The cause was submitted to the court on April 24, 1909. Since the time fixed for the notice of sale was May 1, and the time intervening between the date of submission and that date was too brief to permit us to put our views in writing, we deemed it advisable to announce our conclusion that the judgment of the district court should be affirmed, and defer the delivery of a formal opinion to a later date. This we did, and now give the foregoing statement of our reasons therefor.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH: I concur in the result reached in this case and in all that is said by the Chief Justice, with this excep- tion relative to paragraph 6 of the opinion, *videlicet:* I think the only legal method of procedure is to first obtain from the taxpayers a general consent to the project of raising the limit of indebtedness, and that the council should thereafter select the particular water supply. Any other construction of the law

will lead to the result that, if the council's first selection cannot be acquired, a new election will be necessary. And I foresee other complications. As this case was confessedly instituted to obtain a construction of the law (see *Carlson* v. *City of Helena,* 38 Mont. 581, 101 Pac. 163), I think the method of procedure above indicated should be declared to be, not only the orderly method, but the only legal method, to the end that the "Helena water controversy" shall be forever settled so far as the courts are concerned. If the matter is submitted to the taxpayers, as I think it should be, then in case the supply first selected cannot be obtained, the council may proceed to negotiate for some other, and so on, until the will of the taxpayers that the city shall own its own water supply is carried into effect.

Rehearing denied June 9, 1909.